Millard L. Midonick, J.
This is an application by an adopted child now an adult in her late 30’s for permission to inspect sealed adoption records pursuant to section 114 of the Domestic Relations Law.
When this application was first argued the court rendered a decision dated March 19, 1974 which was not published. The parties now consent to its publication. The court at that time was of the opinion that a search should initially be made concerning the whereabouts of the natural mother.
The court stated:
"The natural mother if found may in fact consent to the requested relief. The argument by the respondent Children’s Aid Society that the natural mother’s right to secrecy will be placed in jeopardy is without merit. This right of secrecy is not an unqualified right since Domestic Relations Law section 114 permits inspection of these records upon 'good cause’ being shown. In any event, no such right shall be infringed at this time since the investigation to be conducted shall be made under the supervision of the respondent agency which previously dealt with the natural mother, and the results of the investigation shall be made available only to the court in the first instance.
"The respondent Children’s Aid Society is accordingly directed to conduct an investigation as to the whereabouts of the natural mother. This investigation is to be carried out at petitioner’s expense by an independent third party who is a *109 private investigator licensed as such by the State of New York. The investigator is to be chosen by respondent and shall report only to the respondent. Petitioner may limit the expense of the investigation by the inclusion of a provision to that effect in the order to be entered herein. The investigator shall be retained solely to locate the natural mother and is not to communicate with her nor be informed as to the reason for such investigation. The respondent shall report the result of the investigation to the court and shall make no attempt to communicate with the natural mother. Upon receipt of this information the court will direct its adoption investigator, who is also an attorney, to communicate with the natural mother and advise her of the present proceeding and the relief requested and of her rights in this matter. This court’s adoption investigator is and shall be directed to proceed so as not to reveal to anyone but the natural mother, the nature of the inquiry, and he shall also advise her of her rights to refuse to waive the privacy and confidentiality of her natural relationship to the adopted petitioner.”
The order entered April 11, 1974 directing the respondent to conduct the investigation was affirmed by the Appellate Division of this Department on July 2, 1974 (Matter of Maxtone-Graham v Children’s Aid Soc., 45 AD2d 935).
The natural mother was eventually found. She was not found by the respondent’s investigator, but through petitioner’s. own efforts. It is noted that if this procedure be again adopted, the court may consider allowing the petitioner to participate in the selection of the investigation in some manner.
The natural mother appeared in court and consented to the relief requested by petitioner. Petitioner contended that she was then entitled to free access to all the records of the respondent agencies relative to her adoption. Her psychiatrist submitted an affidavit stating that all such records would be necessary for her treatment. The respondent agencies agreed to turn over all records they possess but contended that names and addresses of the foster parents with whom petitioner resided should be stricken from those records.
Since the natural mother consented, the court was of the opinion that copies of all records relative to her should be turned over to petitioner and respondents agreed. The court, however, instructed the parties that a showing of good cause was necessary before the court would allow access to the *110 remaining records which included the names and addresses of the foster parents. The matter was set down for a hearing on that issue. The issue concerns only the question of disclosure of the names and addresses of the foster parents. Disclosure of all other information contained in the records had been agreed to by respondents.
Following a hearing the court is of the opinion that good cause has not been established relative to the request for information concerning the names and addresses of the foster parents. There is information in the records which the respondents agree to turn over to petitioner which concerns the personal affairs of the foster parents and which was obtained in confidence over 30 years ago. The testimony of petitioner’s psychiatrist failed to establish that the names and addresses of these persons would be of any useful purpose in his treatment of petitioner. He was not sure of the effect of such information relative to petitioner’s treatment and in this regard he was quite candid. On the other hand an official of one of the respondent agencies testified that it is difficult to obtain the services of foster parents and that foster parents are necessary for the benefit of the infants committed to the agency’s care. The substance of his testimony was that assurance of confidentiality of all personal information given by foster parents permits free access between the foster parent and the agency and this in turn enables the agency to better assist the foster parents in caring for the infants.
To permit discovery of the names and addresses of the foster parents, after all these years, will serve no purpose with regard to the petitioner and might tend to disrupt the relationship between child care agencies and foster parents with the ultimate harm falling upon the many infants subjected to their care. Copies of all remaining records of the respondent agencies regarding petitioner are to be made available to petitioner’s psychiatrist without the names of the foster parents. By consent of all parties, copies of these records shall constitute petitioner’s property.