The ALMA SOCIETY INCORPORATED et al., Plaintiffs,

v.

Irving MELLON, Director of Vital Records, City of New York, et al., Defendants.

No. 77 Civ. 2527(MP).

United States District Court, S. D. New York.

Nov. 2, 1978.

Cyril C. Means, Jr., New York City, for plaintiffs.

Charles L. Brody, Asst. Atty. Gen. of the State of New York, New York City, Beryl M. Kuder, Asst. Corp. Counsel of the City of New York, New York City, for defendant Officials.

Polier, Tulin, Clark & Neff by Stephen Wise Tulin, New York City, for defendant Louise Wise Services.

Simpson, Thacher & Bartlett, New York City, by Wesley N. Fach, Jr., Ronald L. Ginns, New York City, for Spence-Chapin Services.

Webster & Sheffield, New York City, by David A. Hom, Donald J. Cohn, New York City, for Children's Aid Society.

Bodell & Magovern, New York City, by Gerald E. Bodell, New York City, for Jewish Child Care Association of N.Y. and New York Foundling Hospital.

· Buttenwieser & Josephs, New York City, Helen L. Buttenwieser, New York City, Court-appointed Law Guardian.

## DECISION

POLLACK, District Judge.

The defendants have moved to dismiss the amended complaint herein or in the alternative to abstain from decision until the statutes are interpreted by the state court. For reasons given hereafter, the suit will be dismissed.

The plaintiffs are adults who were adopted as children and now seek access to their original birth certificates, the Court records in their adoption proceedings, and the records of any private agencies involved in their adoptions.

Various New York statutes require that these records be sealed and that access to

them be granted only by Court order. Public Health Law, Section 4138; New York City Administrative Code, Section 567–2.0 (original birth certificates); Domestic Relations Law, Section 114 (court records); Social Services Law, Section 372 (agency records).

These statutes are quoted by the plaintiffs at pages 8 to 14 of the amended complaint. Domestic Relations Law, Section 114, in particular requires that an order allowing access to Court records may be granted "on good cause shown."

So far as the Court can determine only one plaintiff, Maxtone-Graham, applied to the state courts for access to her records, which was granted in part.

The defendants are municipal officials who have custody of the original birth certificates of the plaintiffs; Surrogates of the counties in which twelve of the plaintiffs were adopted and in which the Court records in their adoption proceedings are now kept under seal; and five private agencies that handled the adoptions of fourteen of the plaintiffs and that now keep their records of these adoptions under seal.

The plaintiffs argue that adult adoptees should be given access to the records of their adoptions with no showing of cause whatsoever. The present system of requiring a showing of cause and a Court order to gain access, the plaintiffs say, leads to psychological trauma, risk to health due to ignorance of the medical history of the adoptee and his natural ancestors, danger of incest, and a burden on the free exercise of the adoptee's religion.

For these reasons, the plaintiffs urge that the New York statutes violate the First, Fourth, Ninth, Thirteenth and Fourteenth Amendments to the Constitution of the United States. The plaintiffs therefore ask that the Court declare these statutes unconstitutional and enjoin their enforcement against adult adoptees.

There are some threshold procedural questions to be dealt with before the merits of the claims are reached.

■ 1. Certain defendants argue that the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), require that the complaint be dismissed. The plaintiffs counter that *Younger* applies only when state proceedings in the matter are pending.

The plaintiffs' argument is correct. The Supreme Court wrote in its most recent case construing *Younger* that its principles were involved "when litigation between the same parties and raising the same issues is or apparently soon will be pending in a State Court." *Trainor v. Hernandez*, 431 U.S. 434, 440, 97 S.Ct. 1911, 1916, 52 L.Ed.2d 486 (1977). *See also Maher v. Doe*, 432 U.S. 526, 527, 97 S.Ct. 2474, 2475, 53 L.Ed.2d 534 (1977) (per curiam). That case was remanded to apply the *Younger* doctrine "if a relevant State proceeding was pending." In two of the three cases in which the defendants say that *Younger* was applied where no State proceeding was pending, a State proceeding was indeed pending. *Schacter v. Whalen*, 445 F.Supp. 1376 (S.D.N.Y.1978) (pending administrative proceeding); *Merrick v. Merrick*, 441 F.Supp. 143 (S.D.N.Y.1977) (pending child-support action). In the third case, *Williams v. Williams*, 532 F.2d 120 (8th Cir. 1976), the plaintiff sued a state court judge and sought a declaration that a judgment entered by that judge was unconstitutional and an injunction against its enforcement. The Eighth Circuit held that *Younger* required dismissal because the judgment remained open to collateral attack in state court. Even if *Williams* was a proper extension of *Younger*, it does not apply here because no state judgment has been entered.

■ 2. It is urged that *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) applies herein. This involves an inquiry focused on the possibility that the state courts may interpret a challenged state statute so as to eliminate or at least alter materially the constitutional question presented.

The defendants argue that if the plaintiffs applied to the state courts for access to

their records, those Courts might construe "good cause" in a way that would allow the plaintiffs to see their records, and therefore that this Court should abstain from deciding the constitutional issues raised by the complaint. In this the defendants rely on *Yesterday's Children v. Kennedy*, 569 F.2d 431 (7th Cir. 1977), in which adult adoptees attacked two Illinois statutes that require a Court order for the release of adoption records and original birth certificates. The Seventh Circuit understood the complaint to allege that these statutes set too high a standard of cause for release of the records to adult adoptees. The Court abstained because the two statutes had been interpreted only once, by a lower court in an unreported opinion, and because it thought that the Illinois Courts might interpret the standard of cause in a way that would meet the plaintiffs' objections.

The plaintiffs reply that they are claiming that *any* requirement of cause whatsoever is unconstitutional, not merely that the New York Courts have set too high a standard. It is "wildly speculative," they say, that the state courts will eliminate any standard of cause for adult adoptees, and any such possibility is too remote to justify abstention.

In the Court's opinion the plaintiffs' claim should be decided here. The New York Courts do require good cause for the release of records to adult adoptees, for example, *see In Re Chattman*, 57 App. Div.2d 618, 393 N.Y.S.2d 768 (2d Dep't 1977); *In Re Maxtone-Graham*, 90 Misc.2d 107, 393 N.Y.S.2d 835 (Sur.Ct.N.Y.Co.1975), and there is no evidence that the New York Courts are about to abandon this requirement. Since the plaintiff claims that any requirement of cause is unconstitutional, the constitutional issues will not likely be eliminated or changed by a new interpretation of state law. As the Attorney General recognizes in his brief, *Pullman* abstention is therefore inappropriate.

3. Certain defendants argue that The Alma Society has no standing and that the plaintiffs who already have received from other sources the information probably contained in their records also have no standing. Since there would remain plaintiffs who have standing even if these did not, the Court does not discuss these arguments.

### Summary of Arguments on the Merits

The plaintiffs argue that any requirement of good cause violates the Constitution, first, because it discriminates against adoptees, a suspect classification under the Equal Protection Clause; second, because it infringes the right to privacy in matters of family life; third, because it denies adoptees their right to acquire useful information; and, fourth, because it is a badge or incident of slavery forbidden by the Thirteenth Amendment.

### Suspect Classification under Equal Protection

The Supreme Court has identified a suspect class entitled to the protections of strict judicial scrutiny as one saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process. *Mathews v. Lucas*, 427 U.S. 495, 506, 96 S.Ct. 2755, 2762, 49 L.Ed.2d 651 (1976).

The plaintiffs argue that adoptees are so powerless politically that they require the protection due to discrete and insular minorities. The defendants rely principally on *Mathews, supra*, which held that illegitimacy is not a suspect classification.

### Right of Privacy

The plaintiffs appear to argue that the right of privacy accorded by the Supreme Court to certain aspects of family life and procreation, for example, *Moore v. City of East Cleveland*, 431 U.S. 494, 499, 97 S.Ct. 1932, 1935, 52 L.Ed.2d 531 (1977), also protects their interest in personal identity.

The defendants reply that the plaintiffs' interests are not fundamental enough to warrant this protection.

*Right to Acquire Useful Information*

With respect to the right to acquire useful information, here the defendants rely principally on *Gotkin v. Miller*, 379 F.Supp. 859, 862–63 (E.D.N.Y.1974), *aff'd*, 514 F.2d 125 (2d Cir. 1975).

In *Gotkin*, a former mental patient argued that her right to acquire useful information entitled her to see confidential records of mental hospitals in which she had been confined.

The Court held that the right to acquire useful information was a corollary of the right of free speech and had never been used to compel an unwilling speaker to impart information. The plaintiffs respond that the records sought here are more important to them than the hospital records were to Mrs. Gotkin.

*Thirteenth Amendment*

With respect to the Thirteenth Amendment, the gist of the plaintiffs' argument is that the requirement of good cause is a badge or incident of slavery because it is the equivalent of the sale and separation from their parents of slave children too young to remember who their parents were.

The defendants reply that nothing like the good cause requirement has been recognized as a badge or incident of slavery and that this argument is frivolous.

*Countervailing State Interests*

On the subject of countervailing state interests, the defendants argue that even if the plaintiffs had some constitutional right to inspect their records, that right would have to be balanced against the legitimate interests of the state in the confidentiality of these records. These interests include encouraging natural parents, foster parents, and prospective parents to disclose to the adoption agency whatever personal information might help the agency to place the child in a suitable home; assuring the natural parents their privacy in order to encourage them to put their child up for adoption through legal channels rather than on the unofficial black market in adoptions; pro-

tecting the privacy of natural parents who have already given their child up for adoption and may not want to be found by their child; and protecting the adoptive family from the disruption caused by locating their adoptive child's natural parents.

It is in order to avoid *Pullman* abstention, as the Court sees it, that the plaintiffs have taken the position that New York can never constitutionally withhold adoption records from adult adoptees.

■ The Supreme Court has reiterated that the right to privacy may be regulated by the state if such regulation is justified by compelling or state interests. When, as here, no fundamental interest is involved, the statute challenged should be upheld if it is reasonable, not arbitrary, and bears a rational relationship to a permissible state objective.

■ Indeed, intrusions on the privacy of the individual may be justified in the public interest. The natural parents surrendered a child for adoption with not merely an expectation of confidentiality, but with actual statutory assurance that his or her identity as the child's parent will be shielded from public disclosure. Thus, the natural parent has a right to privacy, a right to be let alone that is not only expressly assured but also has been recognized as a vital interest by the United States Supreme Court, *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969).

The New York statutes and regulations which seal adoption records protect the right to privacy of the adopting parents and that of natural parents from unwarranted intrusion. The State Legislature and the other bodies which have fashioned rules have recognized that this right to privacy also cannot be made absolute, that parties such as the adult adoptees here may have a countervailing interest which may warrant disclosure in spite of assurances of secrecy.

For this reason, the regulations and statutes have provided that upon good cause shown a Court may order that the records be revealed to the party making proper application.

This statutory provision vests in the Court the power to weigh and balance the competing privacy rights and make a determination based on the facts and circumstances of each individual case.

 No constitutional or personal right is unconditional and absolute to the exclusion of the rights of all other individuals.

The statutes before the Court do not totally deny plaintiffs access to the information they seek. They only require that they, as members of a class in which there is an overwhelming state interest, must demonstrate good cause in order to protect the countervailing privacy rights of the natural parents. Such a limitation based upon a valid state policy of protecting the rights of others is not an unconstitutional exercise of state power.

In the last analysis, as the Supreme Court has expressly pointed out, "the protection of a person's *general* right to privacy—his right to be let alone by other people—is, like the protection of his property and of his very life, left largely to the law of the individual states." *Katz v. United States*, 389 U.S. 347, 350–51, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (footnotes omitted).

It is the opinion of this Court that plaintiffs' rights to privacy and to receive important information are not constitutionally abridged by the New York statutes but rather are permissibly limited in accordance with a valid state interest to balance conflicting rights of privacy and to protect the integrity of the adoption process, which is likely to suffer if the assurances of secrecy are not present. Constitutional principles of equal protection do not require that all persons be treated identically.

The state has more than a rational basis; it has a compelling interest in regulating the access sought here.

These views will be recognized almost in *haec verba* as the views also expressed by the New Jersey Court in *Mills v. Atlantic City Department of Vital Statistics*, 148 N.J.Super. 302, 372 A.2d 646 (Ch.Div.1977).

The Court holds that the regulations challenged here are reasonable and appropriate; the Court accordingly concludes that even if the plaintiffs had made out a constitutional right of access to their records in any circumstances their failure to accommodate the state's interests seems to the Court to require that their complaint be dismissed and accordingly the Court concludes that judgment shall be entered herein dismissing the complaint.

SO ORDERED.