Ann B. SCHECHTER, Plaintiff,

v.

David BOREN, Governor of the State of Oklahoma, and Lloyd E. Rader, Director of Institutions Social and Rehabilitative Services, Defendants.

No. CIV–77–525–D.

United States District Court,
W. D. Oklahoma.

July 14, 1980.

Claude E. Love, Oklahoma City, Okl., for plaintiff.

Geary L. Walke, Del City, Okl., for amicus curiae, American Civil Liberties Union.

Larry Derryberry, Atty. Gen. by Paul C. Duncan and Nathan J. Gigger, Asst. Attys. Gen., Oklahoma City, Okl., for defendant Boren.

Donald Lee Ritter, Oklahoma City, Okl., for defendant Rader.

**2**

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff, as an adult adoptee, proceeds under 42 U.S.C. § 1983 and as a class action in an attack on the closed adoption records laws of the State of Oklahoma claiming that the same deprive her of certain of her constitutional rights.[1]

Plaintiff claims these laws deprive her of her rights as an adult adoptee under the First, Ninth and Fourteenth Amendments of the United States Constitution.[2] Plaintiff was adopted under Oklahoma law when her mother voluntarily surrendered her to the jurisdiction of the Oklahoma County Court of the State of Oklahoma, the Oklahoma court then possessing adoption authority and jurisdiction. This court temporarily placed her with the Department of Public Welfare (now known as the Department of Human Services and formerly known as the Oklahoma Department of Institutions, Social and Rehabilitative Services or DISRS) as an adoptive agency. In due course under this arrangement the Oklahoma County Court permanently placed Plaintiff with her adoptive parents and in accordance with State law the adoption records were sealed. After reaching adulthood Plaintiff sought information from DISRS, some of which was furnished and some of which was refused.

■ The Court first determines that this action may proceed as a class action. The four prerequisites of Rule 23(a), Federal Rules of Civil Procedure are clearly present and one, if not all three, of the options in Rule 23(b), Federal Rules of Civil Procedure, are also demonstrated in this case.

---

1. In her complaint Plaintiff only refers to 56 Oklahoma Statutes § 183 which is the Oklahoma law giving confidential status to welfare records in general and which makes no specific reference to adoption records. This law, as amended in 1979, reads as follows:

 All applications and records concerning any applicant or recipient shall be confidential and shall be open to inspection only to persons duly authorized by the State or United States in connection with the performance of their official duties. Provided the monthly warrant register now furnished the County Boards by the Department of Institutions, Social and Rehabilitative Services, showing the names and addresses of all recipients and all employees receiving salary, expenses, mileage and payment under this Act in such county, together with the amount paid to each recipient, shall be a public record in the county office and shall be open to public inspection as provided by law.

 It shall be unlawful and a misdemeanor for the Commission, a County Board or any employee working under the direction of the Department or the State Auditor and Inspector or the State Treasurer, or any other public officer or employee, to furnish or permit to be taken off of the records any information therein contained for commercial or political purposes.

 It shall also be unlawful, and shall be a felony, punishable by imprisonment in the State Penitentiary for not to exceed two (2) years, for any person, firm or corporation to publish, or to use for commercial or political purposes, any list or names obtained through access to such records, or for any person firm or corporation to use, for commercial or political purposes, any list or names of recipients of public assistance.

 As the above law provides for inspection by persons duly authorized by state law in connection with the performance of their official duties (which would include adoption court judges) and as the adoption laws of Oklahoma contain a specific section relating to the confidential character of (adoption) hearings and records and provide for inspection thereof upon order of the adoption court for good cause shown, the general law cited by Plaintiff cannot be considered to the exclusion of the specific statute 10 Oklahoma Statutes 1971 § 60.17 which is a provision of the Uniform Adoption Act adopted by Oklahoma. This section reads as follows:

 (1) Unless the court shall otherwise order, all hearings held in proceedings under this Act shall be confidential and shall be held in closed court without admittance of any person other than interested parties and their counsel.

 (2) All papers and records pertaining to the adoption shall be kept as a permanent record of the court and withheld from inspection. No person shall have access to such records except on order of the judge of the court in which the decree of adoption was entered, for good cause shown.

 (3) All files and records pertaining to said adoption proceedings shall be confidential and withheld from inspection except upon order of the court for good cause shown.

2. By brief Plaintiff adds the Thirteenth Amendment (abolishment of slavery) claiming that the Oklahoma closed adoption laws impose a badge or incident of slavery upon her.

The attack herein on the Oklahoma closed adoption records laws is not the only attack which has been made on the closed adoption records laws of a state. New York is a closed adoption records law state. Like Oklahoma the laws of New York provide for the sealing of records pertaining to an adoption unless "good cause" is shown and provide a tribunal with jurisdiction to conduct a hearing and allow the production of information from the sealed records upon a showing of "good cause."

All arguments made herein by the Plaintiff were made in the recent case of *Alma Soc. Inc. v. Mellon*, 601 F.2d 1225 (2nd Cir. 1979), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979), in which the closed adoption records laws of New York were unsuccessfully attacked by an adult adoptee as being in violation of her rights of identity, privacy, personhood, due process, equal protection of the laws and as imposing upon her badges or incidents of slavery. In the New York case the Plaintiff claimed the closed adoption records laws violated her First, Fourth, Ninth, Thirteenth and Fourteenth Amendments to the Constitution of the United States. *See Alma Soc. Inc. v. Mellon*, 459 F.Supp. 912, 914 (S.D.N.Y.1978), *aff'd*, 601 F.2d 1225 (2nd Cir. 1979), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979).

In *Alma Soc. Inc.* the Court properly recognized that in the adoption process there were not only involved rights of the adopted child, both before and after adulthood, but also rights of the natural parents and the adopting parents and that the court was dealing with two families, the family of the natural parents and the adopting family.

As both the district court and the circuit court in the New York case have exhaustively treated with and rejected all constitutional claims made therein and herein, and as this Court fully agrees with the findings and conclusions as announced in the *Alma Soc. Inc.* opinions, *supra*, it would serve little if any purpose to repeat the same in this opinion. It will be sufficient to briefly quote from the Circuit opinion as follows:

Even assuming that the [suspect] classification here were subject to intermediate scrutiny, it would not violate equal protection; for we conclude that it is substantially related to an important state interest. . . .

. . . .

Judged by these standards, the New York sealed record statutes do not want constitutional validity. The statutes, we think, serve important interests [and] represent a considered legislative judgment that the confidentiality statutes promote the social policy underlying adoption laws. [citation omitted] Originally, sealing adoption records was discretionary with the court, . . . but in 1938 confidentiality of adoption records became mandatory. . . . And the major purpose of adoption legislation is to encourage natural parents to use the process when they are unwilling or unable to care for their offspring. New York has established a careful legislative scheme governing when adoption may occur and providing for judicial review, to encourage and facilitate the social policy of placing children in permanent loving homes when a natural family breaks up. As the court of appeals stated in *Scarpetta v. Spence-Chapin Adoption Service*, 28 N.Y.2d 185, 195, 321 N.Y.S.2d 65, 73, 269 N.E.2d 787, 794, *cert. denied*, 404 U.S. 805, 92 S.Ct. 54, 30 L.Ed.2d 38 (1971), "[i]t cannot be doubted that the public policy of our State is contrary to the disclosure of the names and identities of the natural parents and prospective adoptive parents to each other." (Footnote omitted.) Forty-two other states, according to the State of New York, require that birth and adoption records be kept confidential, indicating the importance of the matter of confidentiality. *See also* Uniform Adoption Act (U.L.A.) § 16(2) (rev.1969) (adoption records "are subject to inspection only upon consent of the Court and all interested persons; or in exceptional cases, only upon an order of the Court for good cause shown"). These significant legislative goals clearly justify the State's

decision to keep the natural parents' names secret from adopted persons but not from non-adopted persons.

. . . .

. . . But the state does have an interest that does not wane as the adopted child grows to adulthood, namely, the interest in protecting the privacy of the parents. . . .

. . . .

. . . Here, the legislature has not unreasonably concluded that a larger proportion of the natural parents of adopted children than of non-adopted children would want to keep their identities private. That is enough to make the statutory classification constitutional.

Moreover, . . . The New York courts have granted access for aid in psychiatric or psychological treatment, *In re "Anonymous,"* 92 Misc.2d 224, 399 N.Y.S.2d 857 (Surr.Ct.1977); *In re Maxtone-Graham,* 90 Misc.2d 107, 393 N.Y.S.2d 835 (Surr.Ct. 1975), and for information about genetic conditions. *In re Chattman,* 57 A.D.2d 618, 393 N.Y.S.2d 768 (1977). Thus this case presents an entirely different situation from what it would have if the State permitted no access on any ground. The permitted showing of good cause promotes individualized treatment, a form of structural justice. . . . . .

. . . .

This Thirteenth Amendment argument simply does not conform to the Supreme Court's interpretations of the Thirteenth Amendment.

. . . .

. . . Appellants are left to their remedies under the New York statute or with the New York legislature.

601 F.2d at 1234–1239 (footnote omitted).

The Court concludes that the closed adoption records laws of Oklahoma are constitutional. They represent a rational state policy and serve a compelling state interest as determined by the Oklahoma legislature. They do not violate any of Plaintiff's constitutional rights as asserted herein.[3]

 The record herein reveals that Plaintiff has previously availed herself of a "good cause" proceeding under 10 Oklahoma Statutes 1971 § 60.17 and has obtained certain information including the identity of her natural mother. The results of this "good cause" proceeding are, of course, not on appeal here. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The record herein also reveals that Plaintiff has obtained certain information from the records of DISRS furnished without and not pursuant to a court order. Despite furnishing this information the Court notes that it appears to be the contention of Defendants herein that any adoption records possessed by DISRS are made confidential by Section 183 and are not subject to disclosure under Section 60.-17. This contention is inconsistent with testimony before the Court that it is the policy of DISRS to provide any adoption information and records in its possession, with the exception of certain identifying information concerning the natural parents of the adoptee,[4] upon a showing of "good cause" by the applicant and to do so without a court order. This contention is also inconsistent with the fact that DISRS serves as an arm or agency of the adopting court when it accepts temporary custody of an adoptee (who is in court) and assists the adopting court in its permanent placement of the adoptee. Furthermore, as the Court has indicated in Footnote 1 above, Section 183 relied on in support of this contention refers only to welfare records in general and not to adoption records in particular. Such policy and agency relationship both militate against the contention of Defendants that the adoption records of DISRS are not subject to the "good cause" provisions

---

3. Defendants' pending Motion to Reopen Defense is denied as the Court is of the opinion that the facts herein as demonstrated by the record are not distinguishable from the *Alma Soc. Inc.* case and bring this case within the decision of *Alma Soc. Inc.*

4. This identifying information is available from the records of the adopting court upon good cause being shown and was so obtained by the Plaintiff herein.

of Section 60.17. Also Plaintiff testified herein that the official in charge of the adoption records in DISRS stated to her, "... that I would have to obtain a court order" to get the information not furnished. The Court is therefore of the opinion that Section 183 cannot be construed to the exclusion of Section 60.17 which deals specifically with adoption records. This is required by the well recognized rule of statutory construction that a specific statute is not controlled by a general statute regardless of the priority of enactment. *See generally Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Glover Construction Co. v. Andrus*, 591 F.2d 554 (10th Cir. 1979), *cert. granted*, 444 U.S. 962, 100 S.Ct. 448, 62 L.Ed.2d 374 (1979); *Utah v. Kleppe*, 586 F.2d 756 (10th Cir. 1978), *cert. granted*, 442 U.S. 928, 99 S.Ct. 2857, 61 L.Ed.2d 296 (1979). The laws of Oklahoma are therefore construed to require that the adoption records of DISRS are subject to disclosure upon an order of an adoption court entered upon a showing of "good cause" pursuant to 10 Oklahoma Statutes 60.17, the specific Oklahoma statute treating with the disclosure of adoption records and reliance on 56 Oklahoma Statutes 183 as giving such records as may be in the possession of DISRS complete confidential status is inappropriate and without justification.[5] Hence, the law of Oklahoma in this regard is construed as being the same as that of New York in connection with production of adoption records upon a showing of "good cause" as discussed in the *Alma Soc. Inc.* case.

Accordingly, Plaintiff's action herein should be dismissed as being without merit for the reasons heretofore stated.

---

**5.** The Court recognizes that a contrary result was reached by the Oklahoma County District Court at the urging of counsel for DISRS in *In re Adoption of Jan Denise Curlee*, No. 26,719 (District Court of Oklahoma County, Oklahoma, April 11, 1977). However, this trial court ruling was not appealed and in the absence of a definitive decision on this issue by the Oklahoma Supreme Court, the Court finds that said decision of the District Court of Oklahoma County, Oklahoma is not persuasive and declines to follow the same. *See Commissioner v. Bosch*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *King v. Order of United Commercial Travelers*, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608 (1948).

Furthermore, as it appears that Title 56 Oklahoma Statutes Section 183 as interpreted by the Oklahoma County District Court in said case with reference to adoption records might be unconstitutional without a "good cause" provision under the *Alma Soc. Inc.* case, this Court would not be bound by said decision in this federal case and declines to follow the same. *See generally Goldsmith v. Cheney*, 447 F.2d 624 (10th Cir. 1971); *Pierce v. Oklahoma*, 436 F.Supp. 1026 (W.D.Okla.1977).