OPINION OF THE COURT
Bernard M. Bloom, S.
Petitioner is incarcerated at Dannemora. He has informally submitted an application pursuant to section 114 of the Domestic Relations Law to gain access to records pertaining to his adoption maintained in this court, the Department of Health and Angel Guardian Home.
Petitioner’s papers appear to present three lines of argument concerning the actual merits of his application to review and inspect such records: (1) that he can show the “good cause” required by section 114 of the Domestic Relations Law to obtain an order to unseal them; (2) that even if he cannot show “good cause”, he is entitled to review them by virtue of having attained the age of legal majority; and (3) that section 114 is unconstitutional as violative of his Federally guaranteed rights against cruel and unusual punishment and to equal protection of the law and of asserted constitutional rights to human identity and social and psychological well-being.
Petitioner was born in 1951 and was adopted about 10 years later. His adoptive parents have died. He claims to have been given information that his natural mother con *100 tested his adoption for several years but was ultimately unsuccessful due to a lack of funds and legal representation. He has an adult adoptive sister who, he states, is aware of this petition and consents to the relief sought. He also states that his late adoptive parents urged him to seek a reunion with his natural parents upon reaching adulthood.
This petition is purportedly the product not of mere curiosity but of a true psychological need to learn where his “natural roots” lie with respect to race, nationality, religion, culture and heredity. In his own words: “petitioner was recently confronted (September, 1980) with the very real issues of his orphanhood and adoption status with regard to his current and probable on-going state of deprived well-being, especially with respect to his rights to identity. Petitioner’s recent psychological evaluation pointed to evident ramifications germane to a natural and healthy state of being. Thus this instant petition resulted from his recently being directed to relate to himself as a whole person. Such relative social achievement would not be possible without the knowledge of ones’ [sic] ‘Natural Roots’, Heridity [sic], Culture and inheritant religion, all tantamount to identity”.
The application cites and discusses most of the relevant cases and asks in particular that this court employ the procedure used in Matter of Maxtone-Graham (90 Misc 2d 107), in which the court directed that a search be conducted for the natural mother with a view toward releasing the portions of the adoption record pertaining to her if she consented thereto.
The Attorney-General has appeared in opposition to petitioner’s claim that section 114 of the Domestic Relations Law is unconstitutional but has riot taken a position thus far as to whether or not “good cause” exists to unseal the adoption records.
Along with his application to unseal the records, petitioner also asserts that he is indigent and therefore seeks leave to proceed in forma pauperis and to have an attorney appointed to represent him.
CPLR 1101, which governs the granting of leave to proceed as a poor person in a civil action of any description, *101 and its companion provision, CPLR 1102, which provides that an attorney may be assigned to a poor person, have uniformly been held to confer no absolute rights, but rather to be addressed to the sound discretion of the court. This is obvious not only from the very language of CPLR 1101 and 1102, but also by inference from the fact that with respect to type of civil cases in which the Legislature sought to codify or create an absolute right to legal representation, it enacted specific statutes clearly establishing that right. (See, e.g., SCPA 407 [affording an indigent litigant in the Surrogate’s Court the right to assigned counsel to oppose approval of a child surrender instrument, to contest threatened loss of parental rights upon the alleged ground of abandonment, or to resist the adoption of his or her child] and Family Ct Act, § 262 [providing, inter alia, an absolute right to legal representation to respondent in proceedings for removal of a child for abuse or neglect, in applications for an order of protection based on his or her alleged commission of a family offense, and in cases for the determination of child custody or the propriety of an adoption].) It is worthy of note that in these instances the Legislature has provided compensation for the attorneys to the same extent as afforded assigned counsel in criminal cases under article 18-B of the County Law. Counsel appointed under CPLR 1102, on the other hand, must serve gratuitously unless a recovery is realized from which the court chooses to allow a reasonable sum as compensation under CPLR 1102 (subd [d]).
As for the underlying Federal and State constitutional rights of indigents to counsel in civil proceedings, the Court of Appeals has held that where certain fundamental interests of liberty are at stake, counsel must be provided to those who cannot afford it. (See, e.g., Matter of Ella B., 30 NY2d 352 [indigent parent seeking to contest threatened loss of custodial rights in a neglect proceeding]; People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376 [indigent parolee opposing the revocation of his parole]; People ex rel. Rogers v Stanley, 17 NY2d 256 [indigent mental patients challenging their commitments].)
*102 The Court of Appeals indicated in Matter of Smiley (36 NY2d 433), nevertheless, that since representation by counsel is not a legal condition to access to the courts, there is no constitutional right to assigned counsel in a divorce action even though it be unconstitutional to refuse to entertain the proceeding based on inability to pay court filing fees. (See Boddie v Connecticut, 401 US 371.) The language of Matter of Smiley was indicative of a general reluctance to extend further the obligation of the Bar to provide uncompensated representation and of the general public to underwrite the expenses of litigation without clear legislative mandate. Not surprisingly, Matter of Smiley seems to have virtually halted judicial expansion of provision of assigned counsel to indigent civil litigants. There is only a single case since Matter of Smiley which purports to extend the class of cases in which such legal representation must be afforded in civil actions, namely, Matter of Madeline G. v David R. (95 Misc 2d 273), which held that the respondent in a paternity proceeding was entitled to counsel at least in view of the fact that the State actively aided the petitioner in bringing the proceeding. (But cf. Miller v Gordon, 58 AD2d 1027 [no right to assigned counsel in paternity proceeding].) It will suffice to say that there is no reported case establishing an entitlement to assigned counsel in proceedings to inspect sealed adoption records nor in any case that might be fairly considered analogous.
Moreover, the observation in Matter of Smiley (36 NY2d 433, supra) that assignment of counsel to act without compensation might violate the constitutional rights of attorneys if the burden were to become intolerable has been echoed in some subsequent lower court cases. In Stephens v State of New York (93 Misc 2d 273), a Court of Claims Judge indicated that he personally would deny every in forma pauperis application made by a prisoner until and unless ordered by higher judicial authority or until and unless the Legislature provided funds to compensate counsel. A Supreme Court Judge went even further by holding that assignment of attorneys to serve without remuneration in civil cases violates their constitutional rights. (Menin v Menin, 79 Misc 2d 285, affd 48 AD2d 904.)
*103 Notwithstanding the apparent swing of the pendulum away from granting leave to proceed as a poor person and provision of counsel, the Court of Appeals has yet to overrule its prior cases upholding the right of the courts to assign counsel without compensation. It may be noted also that EC 2-25 of the Code of Professional Responsibility requires members of the Bar to respond to the public need for gratuitous services. Therefore, at the present juncture, the controlling law of this State remains that the court may require attorneys to represent indigents without providing for their compensation.
This is not to say that counsel should be assigned routinely without a meaningful inquiry as to the merits of each such request, particularly in view of the mushrooming volume of such motions. Indeed, the motion addressed to the court’s discretion for leave to proceed as a poor person must state “sufficient facts so that the merit of his contentions can be ascertained” (CPLR 1101, subd [a]). This requirement does not call for a showing of substantial probability of success but requires “only that the court be satisfied that there is merit in the applicant’s contentions — i.e., that it is not frivolous”. (Advisory Comm on Prac & Procedure, Second Preliminary Rep, Feb. 15,1958, tit 94, p 389.) The court may elect to require movant to present a certificate of an attorney stating that he has examined the action and believes there is merit to the movant’s contentions (CPLR 1101, subd [b]).
Because petitioner appears pro se, we proceed to examine the validity of his arguments.
Petitioner’s contention that section 114 of the Domestic Relations Law is unconstitutional must be considered in the light of the summary rejection by the Court of Appeals of a similar claim in Matter of Linda F. M. (52 NY2d 236), citing as dispositive the considered opinion of the Second Circuit Court of Appeals in Alma Soc. v Mellon (601 F2d 1225, cert den 444 US 995). Likewise, no right to inspect one’s adoption records merely because adulthood has been reached has ever been recognized in this State in any reported decision since the Legislature first mandated the confidentiality of adoption records in 1938.
*104 Petitioner’s argument that he has good cause to review the records based upon his psychological need to establish his identity does, however, hold out a better hope of ultimate success. In the Matter of Linda F. M. case it was recognized that “a concrete and compelling” psychological problem, as distinguished from mere general curiosity about one’s parentage, could constitute good cause under section 114 of the Domestic Relations Law, citing with approval Matter of “Anonymous” (92 Misc 2d 224). In that case, Surrogate Laurino described the applicant as an “emotionally spent” individual with a severe psychological disorder caused by not knowing his identity, for whom securing that knowledge had become the single most important thing in his life. He found that these facts, together with the consent of the natural parents (who were located by their guardian ad litem who had theretofore represented their interest in anonymity), warranted the granting of the petition.
It was made clear in Matter of Linda F. M. (52 NY2d 236, supra), however, that a “concrete and compelling need” to learn the facts of one’s ancestry must be proved and not merely alleged. Therein, the application of an adult adoptee to review her records was denied on the basis that she had failed to substantiate her contention that inability to discover her origins was responsible for ruining her marriage and stifling her artistic ability.
In that regard, it is to be noted that the instant petition contains no affidavit by, for example, any person trained in any of the mental health disciplines attesting to the validity of the movant’s claim of psychological need, nor is there any indication that such proof may be forthcoming. Moreover, the movant’s own recitation of good cause is vague in that it states only that his recent psychological evaluation culminated in a directive “to relate to himself as a whole person.”
Upon these facts, the court finds that petitioner has failed to establish sufficient merit to his contentions under CPLR 1101 (subd [a]) as a predicate to the conferring of poor person status upon him. His application to proceed as a poor person is, therefore, denied.
*105 We now turn to petitioner’s request that notice of this proceeding be given to his natural mother by utilization of the novel course of action devised in Matter of Maxtone-Graham (90 Misc 2d 107, supra). There an adult adoptee sought access to her records on the basis of psychological problems the precise nature of which were not elaborated upon in the opinion. The court ordered that the adoption agency that had placed her engage a private investigator (at the petitioner’s expense) to locate the biological mother. Once her present whereabouts were ascertained, the court’s adoption investigator was to contact her to advise her of her legal rights and to determine whether or not she wished to oppose the petition. As it happened, however, the petitioner herself succeeded in finding her natural mother. Upon the natural mother’s consent to the release of the records, all data pertaining to her was ordered unsealed and made available to her daughter. Certain language in the case is indicative that consent of the individual to whom the sealed records pertain makes a showing of good cause to inspect such portions of the record unnecessary.
While Matter of Maxtone-Graham was not mentioned in Matter of Linda F.M., its continued validity is questionable in light of Matter of Linda F.M.’s implication that a showing of good cause must precede the giving of notice to the natural parents. As stated in Matter of Linda F.M. (52 NY2d 236, 240-241, supra): “This appeal also raises the issue of whether notice *** should also be given to the natural parents. Although the notice provision of section 114 specifically mentions only the adoptive parents, the interests of the natural parents dictate that notification be given if the court finds that the petitioner has made a showing of entitlement and provided that the natural parents can be located with reasonable efforts and in a manner that will not be likely to be self-defeating by revealing their identities *** [s]uch notice provides the natural parents with an opportunity to intervene through a representative * * * and defend their interest in retaining anonymity” (emphasis added). The court, therefore, declines to follow the course of action prescribed in Matter of Maxtone-Graham until petitioner has initially made a showing of entitlement to inspect the sealed records.
*106 Petitioner expects to be released from prison no later than early July, 1981. Accordingly, he or his legal representative shall be given until September 1, 1981 to notify the court that a hearing upon the merits of the petition is desired. Such notice and all inquiries concerning this matter should be directed to Law Assistant O’Brien to this court. If no such notification is received on or before that date, the application shall be determined on the papers before the court.