**In re Janice ASSALONE.**

**No. 85–419–Appeal.**

Supreme Court of Rhode Island.
July 30, 1986.

Robert B. Mann, Providence, for plaintiff.

Raymond E. Shawcross, Cranston, for defendant.

1. The petitioner stated in her brief that she addressed this allegation in a memorandum to the trial justice. Because such a memorandum is not part of the record and the proposition was not briefed or addressed during oral argument, we shall give this contention no consideration on review and consider it waived. *Berberian v. New England Telephone & Telegraph Co.*, 117 R.I. 629, 637, 369 A.2d 1109, 1114 (1977); *Clarke v. Sullivan*, 103 R.I. 177, 235 A.2d 668 (1967).

OPINION

KELLEHER, Justice.

This Family Court proceeding was initiated by an adult who, adopted as a child, wished to gain access to the adoption records that contain the identity of her biological parents.

The petitioner, Janice Assalone, was born in October of 1955 and was adopted at the age of 3½ years by a Rhode Island couple. She and her elder brother were raised in Coventry, Rhode Island. The petitioner had been curious about her birth parents' identities since childhood and as the years passed, her curiosity mounted. She began her search for information at an orphanage situated in Providence on Mount Pleasant Avenue, and in due course she was directed to the Diocesan Bureau of Social Services (the bureau), the agency that had handled the adoption. At the age of twenty-one, petitioner was given certain information by the bureau concerning her biological mother. The petitioner was informed that her mother had an Irish name, RH positive blood, no prior illnesses, and had given written consent for the adoption in November of 1958. The petitioner's disappointment with the limited information provided by the bureau prompted this Family Court litigation.

June 30, 1981, petitioner filed a miscellaneous petition, seeking disclosure of the identity of her biological parents and claiming that her right to know was (1) guaranteed by both the Federal and State Constitutions, (2) essential for her physical and mental health, and (3) critical to her due-process rights to inherit from her natural parents.[1] The bureau, which was permit-

*See also Aimone v. Finley,* 113 Ill.App.3d 507, 69 Ill.Dec. 433, 447 N.E.2d 868 (1983), *dismissed,* 465 U.S. 1095, 104 S.Ct. 1583, 80 L.Ed.2d 117 (1984) (where the court held that (1) an adoptee's statutory right to inherit from his/her biological parents is only an expectation of inheritance, and because this right is not vested, the constitutional prohibition against deprivation of property does not attach and (2) the expectation that adoptee may inherit from birth parents

ted to intervene in the proceedings, filed an answer denying petitioner's allegations.

After a hearing on the petition, the trial justice filed a written decision in May of 1985 addressing the issue of whether there was "good cause" to grant petitioner access to the records. The trial justice determined that petitioner had carried her "heavy burden" of persuasion and had established a compelling need to know the identity of her biological parents. He held that such need constituted the requisite good cause to lift the statutory cloak of confidentiality. Thus, he directed the clerk of the Family Court, the director of the Diocesan Bureau of Social Services, and the State Registrar of Vital Statistics to make petitioner's records available upon her request. Final judgment was entered on June 5, 1985, and the trial justice at the same time granted the bureau's motion for stay of judgment pending our determination of the bureau's appeal.

In Rhode Island the public is prohibited from inspecting records of an adoption proceeding unless disclosure of the information is granted by an order of the court. General Laws 1956 (1985 Reenactment) §§ 8–10–21 and 23–3–15. The statutory shield benefits all persons in the adoption triangle: the child, the natural parents, and the adoptive parents. *In re Christine,* 121 R.I. 203, 206, 397 A.2d 511, 512–13 (1979). The Legislature has given the court authority to issue an order providing access to the records, and the discretion conferred by the statute was intended to be exercised upon a showing of good cause. *Id.* at 207, 397 A.2d at 513; *see also In re Roger B.,* 84 Ill.2d 323, 326–27, 49 Ill.Dec. 731, 418 N.E.2d 751, 752–53 (1981).

■ The one seeking access to the information—in this case the adoptee—"bears a heavy burden in establishing the requisite 'good cause.'" *In re Christine,* 121 R.I. at 207, 397 A.2d 513. Although the term "good cause admits of no universal, blackletter definition," *Linda F.M. v. Dept. of*

does not constitute "good cause" for the release

*Health of City of New York,* 52 N.Y.2d 236, 240, 418 N.E.2d 1302, 1304, 437 N.Y. S.2d 283, 285, *dismissed,* 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 76 (1981), in determining whether good cause exists to lift the cloak of confidentiality and the extent of disclosure necessary, courts uniformly balance the following competing interests:

"(1) [T]he nature of the circumstances dictating the need for release of the identity of the birth parents; (2) the circumstances and desires of the adoptive parents; and (3) 'the circumstances of the birth parents and their desire or at least the desire of the birth mother not to be identified;' and (4) the interests of the state in maintaining a viable system of adoption by the assurance of confidentiality." *In re Application of George,* 625 S.W.2d 151, 156 (Mo.Ct.App.1981).

*See also In re Christine,* 121 R.I. 203, 397 A.2d 511 (1979); *In re Roger B.,* 84 Ill.2d 323, 49 Ill.Dec. 731, 418 N.E.2d 751 (1981); *Matter of Dixon,* 116 Mich.App. 763, 323 N.W.2d 549 (1982); *Mills v. Atlantic City Department of Vital Statistics,* 148 N.J. Super. 302, 372 A.2d 646 (1977); *Bradey v. Children's Bureau of South Carolina,* 275 S.C. 622, 274 S.E.2d 418 (1981).

In *Christine* we balanced the interests of the parties to an adoption proceeding and held that a natural mother's desire to contact her child's adoptive parents with the hope of seeing the eleven-year-old child did not outweigh the interests of the other persons in the adoption proceeding and therefore did not constitute good cause to lift the confidentiality curtain. The controversy now before us is a petition by an adult adoptee who, at the suggestion of her adoptive parents, seeks to contact her natural parents. Thus, there is no need to consider the interest of the adoptive parents and risk the disruption of a stable environment in which a child can grow. However, it is still necessary to consider the interests of the state and the potentially strong interests of the natural parents in preserving the confidentiality of the

of the sealed records).

records. *Linda F.M.*, 52 N.Y.2d at 239, 418 N.E.2d at 1303, 437 N.Y.S.2d at 284.

The state's primary concern is to provide an effective adoption procedure, and "[s]ecrecy enables the natural parent to place the child for adoption with a respectable agency with the assurance that his or her identity will not become public knowledge." *In re Christine*, 121 R.I. at 206, 397 A.2d at 513. The natural parents were promised at the time of the adoption that their identities would remain confidential, and they were "afforded an opportunity to restructure [their lives] after a most traumatic episode." *Id.* The natural parents have "a right to privacy, a right to be let alone," *Mills*, 148 N.J.Super. at 311, 372 A.2d at 651, and the expectation of privacy arising from the confidentiality statute is constitutionally protected. *Alma Society, Inc. v. Mellon*, 459 F.Supp. 912, 915 (S.D.N.Y.1978), *aff'd*, 601 F.2d 1225 (2d Cir.), *cert. denied*, 444 U.S. 995, 100 S.Ct. 531, 62 L.Ed.2d 426 (1979); *Mills*, 148 N.J.Super. at 311, 372 A.2d at 651; *Bradey*, 275 S.C. at 626–27, 274 S.E.2d at 421. Such privacy may not be disturbed unless a compelling need for the identifying information is proven; thus, petitioner must establish good cause. *In re Maples*, 563 S.W.2d 760, 766 (Mo.1978); *Matter of Adoption of Spinks*, 32 N.C.App. 422, 425, 232 S.E.2d 479, 482 (1977).

Both parties recognize that an adopted person's psychological need to know the identity of his/her biological parents may constitute good cause to permit adopted adults access to their birth records but dispute whether the evidence presented rises to such a level. The bureau contends that in order to establish good cause, the petitioner must show a "severe psychological need to know" the information that is so compelling that it overrides the birth parents' privacy rights. The bureau insists that no evidence was presented to support a finding that petitioner had a compelling need to know the identity of her birth parents; thus the conclusion that good cause has been shown was erroneous.

On appeal this court will not weigh testimony, resolve credibility issues, or draw its own factual inferences from the record where the evidence presented is susceptible to more than one interpretation. *See Pearl Brewing Co. v. McNaboe*, 495 A.2d 238 (R.I.1985). However, we must determine whether the evidence adduced at trial supports the trial justice's findings, and on the facts presented in the instant case we are unable to conclude that the finding of good cause for full disclosure of the information contained in petitioner's adoption records logically and reasonably flowed from the established facts.

■ Information concerning the identity and whereabouts of any of the parties to the adoption triangle may be released only under compelling circumstances. *In re Maples*, 563 S.W.2d at 766. A severe psychological need to know identifying information may present compelling circumstances that constitute good cause to permit adopted adults access to their birth records. *Mills v. Atlantic City Department of Vital Statistics*, 148 N.J.Super. 302, 372 A.2d 646 (1977); *In re Anonymous*, 92 Misc.2d 224, 399 N.Y.S.2d 857 (1977); *Bradey v. Children's Bureau of South Carolina*, 275 S.C. 622, 274 S.E.2d 418 (1981).

However, unless consent of the birth parents is obtained, a thinly supported claim of "psychological need to know" will not support a finding of good cause. *In re Maples*, 563 S.W.2d at 766. Proof must establish that deep psychological problems stem from the lack of information. *Matter of Dixon*, 116 Mich.App. at 771, 323 N.W.2d at 552–53. In some states this implies that the adult adoptee must show that he/she is a burden to society due to psychological problems resulting from the lack of identifying information. *Maples*, 563 S.W.2d at 764; *accord Bradey, supra*. Although good cause must be determined on a case-by-case basis, most courts require the adoptee who alleges psychological problems as a basis for the petition to prove a "concrete and compelling need" to learn the facts of

one's ancestry, *Linda F.M.*, 52 N.Y.2d at 240, 418 N.E.2d at 1304, 437 N.Y.S.2d at 285 (1981), in order to outweigh the birth parents' rights to privacy.

In *Application of Hayden*, 106 Misc.2d 849, 852, 435 N.Y.S.2d 541, 543 (1981), the court affirmed the finding that the petitioner had alleged compelling reasons "which substantiate that the medical and/or psychological necessity require the opening of an adoption record for the health and well-being" of the petitioner. In *Hayden* the petitioner alleged that she feared she was a "DES Baby" and such fear resulted in psychological strain and concern for her own medical well-being and that of her children. She supported her allegations with a letter from her personal physician, who noted that "[s]he was apparently born prematurely and may have received the drug DES." *Id.* Her personal psychologist also submitted a report confirming that she "has felt an enormous void as though a part of her is incomplete." *Id.* The court held that her allegations, if proven, would entitle her to the identifying information she requested.

However, the requisite connection between the petitioner's alleged problems and the lack of information does not often exist and precludes a finding of good cause even though the petitioner's problems may be genuinely severe. In *Matter of Dixon*, 116 Mich.App. 763, 323 N.W.2d 549 (1982), the adult adoptee who sought disclosure of the information testified that she suffered from severe depression that was attributable, in part, to her lack of knowledge concerning her birth parents' identities. Her psychiatrist submitted a letter to the court stating that Dixon's condition was guarded and that she was

" 'suffering from a severe depressive illness which has manifested itself in several near lethal suicide attempts and has required two hospitalizations. * * * The

denial of access to her adoption records will only be experienced as a further deprivation and therefore have a negative impact on her condition.' " *Id.* at 766 n. 2, 323 N.W.2d at 550 n. 2.

The trial court found that good cause to open the adoption records was not established. The appellate court upheld the finding and stated that a general desire to know her biological mother and the fact that the information would be helpful to her to complete the total picture of herself and assist in psychiatric treatment did not constitute good cause. The "deep seated" psychiatric illness that was shown was not due to the lack of information about her biological parents; therefore, it did not require release of the identifying information.[2]

The Supreme Court of North Carolina considered what facts are necessary in order to support a finding of good cause in *Bradey v. Children's Bureau of South Carolina*, 275 S.C. 622, 274 S.E.2d 418 (1981). The trial justice found that Bradey's "emotional distress, anxiety and earnest desire for the truth" amounted to good cause for disclosure of the adult adoptee's birth parents' identities. The Supreme Court reversed, holding that although the adoptee was insecure, somewhat distracted, and had a genuine desire to know his identity, it did not amount to compelling reasons to release the confidential information. The court noted that the adoptee did not require medical assistance, enjoyed steady employment, and had a family of his own.

Here the trial justice reviewed the evidence presented and determined that petitioner's longstanding preoccupation with obtaining information concerning the identity of her biological parents had adversely affected her social adjustment and that was "sufficient reason to allow [an] adult

---

**2.** The Michigan Supreme Court did not disturb the finding that the petitioner failed to establish good cause but remanded the case, requiring the court to appoint a guardian ad litem to represent the anonymous birth parents' interests in

opposing disclosure at a hearing contesting the issue of good cause. *Dixon v. Department of Public Health,* 417 Mich. 986, 334 N.W.2d 373 (1983).

adoptee access to birth records."[3] The trial justice stated that many adopted adults "share this same natural desire and are actively trying to learn their true identity." He set forth his belief that there is great merit in the position of those involved in the movement to reform the laws requiring confidentiality and the procedures to lift the cloak and asserted "that the time is ripe for legislatures and appellate courts to rethink the "cloak of confidentiality" that has for the last fifty or so years been the practice in adoption proceedings.

The trial justice found that the testimony of petitioner and that of her expert witness, Dr. Brandon Qualls (Qualls), were the most persuasive. However, the witnesses' testimony cannot support a finding that petitioner had a compelling need for the identifying information that, when balanced against the potential interests of the natural parents[4] and the state in preserving confidentiality, amounts to good cause that requires full disclosure of the adoption record.

The petitioner testified that she had not sought or received professional counseling in relation to her quest to seek out her biological parents and admitted that her curiosity had led her to the courthouse. She stated her belief that knowing her parents' identities would help her to improve herself as she is "a little unsettled not knowing [her] past or anything about [her]self."

In his decision the trial justice analyzed the testimony of Qualls and found that it supported the finding of compelling need,

quoting the doctor's statement that petitioner needed "to know from contact or from information from [her biological parents] who she is in the sense of what her roots are and where she comes from." The trial justice also pointed out that Qualls thought the information was important in terms of the sense of a lack of direction petitioner had experienced in her life after leaving school and her adoptive parents' home. Disclosure of her birth parents' identities, the witness said, would help in resolving some of her identity conflicts. Qualls could not say with a reasonable degree of medical certainty that a direct relationship exists between petitioner's lack of information and her alleged problems. The trial justice also noted that neither Qualls nor the psychiatrist who testified on behalf of the bureau suggested that disclosure was essential to her physical health. Indeed, Qualls admitted that petitioner was emotionally healthy and not suffering from any permanent disfunction and has the ability to lead a full and productive life.

The record reveals that this case involves just the type of "root searcher" whose arrival was anticipated. *In re Christine*, 121 R.I. at 207, 397 A.2d at 513. The deeply imbedded curiosity expressed by petitioner and her "drifting" behavior was characterized by Qualls as symptomatic of "geneological bewilderment"[5]—a condition he described as common in adult adoptees. Although we sympathize with petitioner and the plight of other adoptees similarly situated, the record is devoid of any evidence to support the trial justice's

---

3. The trial justice cited *In re Spinks*, 32 N.C.App. 422, 232 S.E.2d 479 (1977), in support of this contention. However, *Spinks* is distinguishable in that North Carolina law requires the judge to determine if the disclosure of the information would be in the best interest of the child or public; any conflict between the interests is resolved in favor of the best interest of the child.

4. The trial justice stated that no evidence was presented to support the continued nondisclosure of facts based on trauma to the birth parents. However, the biological parents' interests must be considered based upon conjecture as

they are not before the court to argue why the information should not be released. *Matter of Dixon*, 116 Mich.App. 763, 768–69, 323 N.W.2d 549, 551 (1982). His failure to consider the biological parents' potential interests was an error.

5. Doctor Qualls defined this term as one "used in the literature on adoption to cover the kind of issue that we're talking about with regards to biological parents, knowing medical, some social, ethnic background about the biological parents."

conclusion that petitioner had a compelling need for the information she sought. She is not suffering from any mental or physical ailment due to her lack of knowledge that precipitated this action. On the contrary, it is clear from petitioner's testimony, which was confirmed by both experts, that her need to obtain information contained in the adoption records arose from her curiosity and desire to discover her natural identity. Unlike the facts in *Hayden,* petitioner's sole purpose in seeing Qualls was to gain support for the allegations of need for the information set forth in her petition. In addition, even Qualls was unable to state that her psychological instability results from her lack of knowledge of her birth parents' identities. Here, where (1) the natural parents have not waived their privacy rights by consenting to the release of the information, (2) petitioner's need for the information is not compelling, and (3) her alleged problems do not stem from the lack of information, petitioner's desire to know cannot prevail over the potential infringement of the birth parents' rights.

We are aware of the possibility that petitioner's biological parents may in fact be eager to share "information about themselves and to receive reports concerning their [biological] children's welfare." *In re Christine,* 121 R.I. at 207 n. 2, 397 A.2d at 513 n. 2. *See also In re Anonymous,* 92 Misc.2d 224, 399 N.Y.S.2d 857 (1977). If contacted, they may have consented to the release of the information, thus alleviating the need to balance the interests of all the parties. *See id.* In response to the consent issue, statutes governing adoptions and the disclosure of adoption records have been reformed in an attempt to accommodate the competing needs and interests of all the parties to adoption triangles. *E.g.,* Wis.Stat.Ann. § 48.432–.433 (West 1985). Rhode Island does not have a statutory procedure to contact birth parents confidentially and ascertain whether they consent to disclosure of the information. The Family Court justice suggested the appointment of a guardian ad litem "to search out the father and mother and determine whether or not they would like to meet with Janice, either or both of them, and if they were favorable, for that person to arrange such a meeting." However, the bureau registered an objection to the suggestion because such action would be an intrusion upon and invasion of the privacy of the biological parents.

Without legislative guidance, some courts have adopted procedures similar to the one suggested by the trial justice and employed intermediaries to locate the biological parents confidentially and ascertain whether they object to the release of the information. *In re Maples,* 563 S.W.2d at 766; *Mills v. Atlantic City Department of Vital Statistics,* 148 N.J.Super. 302, 372 A.2d 646 (1977). If a waiver of the confidentiality of the records is not obtained,

> "such fact should be shown great deference by the court. It is difficult to perceive a case in which circumstances would warrant disclosure of that information unless such waiver is had. The persons whose waiver is sought should, if possible, be fully advised by the court of the pending action and afforded the opportunity to be represented in that proceeding, yet maintain their anonymity." *In re Maples,* 563 S.W.2d at 766.

However, the trial court in exercising its broad equitable powers "may fashion such relief to the applicant as permits the applicant to receive information or assistance short of full disclosure if that provides a practical solution to the applicant's dilemma." *In re Application of George,* 625 S.W.2d 151, 160 (Mo.Ct.App.1981). The New Jersey court, in addition to employing an intermediary, also shifted the burden of proof to the state to demonstrate that good cause is not present where the adoptee seeking disclosure of the records is an adult. *Mills,* 148 N.J.Super. at 318, 372 A.2d at 654.

A different approach, taken by the Michigan court, assumes the biological parents would oppose disclosure and appoints a

guardian ad litem prior to the hearing for the purpose of contesting the issue of good cause. *Dixon v. Department of Public Health,* 417 Mich. 986, 334 N.W.2d 373 (1983).

The New York courts initially adopted a procedure similar to the one used by the Montana and New Jersey courts that directed the agency that handled the adoption to conduct a search for the biological parents to determine whether there was an objection to the release of the information and advise them of their rights to refuse to waive the privacy and confidentiality of their natural relationship to the adopted petitioner. *Matter of Maxtone-Graham,* 90 Misc.2d 107, 393 N.Y.S.2d 835 (1975). The court later staged a partial retreat from the procedure previously enunciated when it addressed the issue of whether notice of such a proceeding must be given to the natural parents when notice was not mandated by statute. The court determined that a search for the biological parent and corresponding notice of the proceeding must be given only "if the court finds that the petitioner has made a showing of *entitlement* and provided that the natural parents can be located with reasonable effort and in a manner that will not be likely to be self-defeating by revealing their identities to the adoptive parents or others." (Emphasis added.) *Linda F.M.,* 52 N.Y.2d at 241, 418 N.E.2d at 1304, 437 N.Y.S.2d at 285. Such "entitlement" has been specifically equated with "good cause." *Application of Romano,* 109 Misc.2d 99, 105–06, 438 N.Y.S.2d 967, 971–72 (1981). Thus, in New York an adult adoptee petitioner must show good cause for disclosure of the information before a search is conducted in order to ascertain whether the biological parent consents to the release of the information.

■ We agree with New York's revised approach in that it adheres to the statutory requirement of good cause and provides notice and the opportunity to the biological parents to be heard, where possible, before any identifying information may be released. Judicial interpretation of our laws governing the release of information contained in adoption records requires the one seeking disclosure of the information to establish good cause or compelling reasons to lift the cloak of confidentiality. We believe that the Legislature, as the creator of the adoption process, is the appropriate forum to articulate changes in the procedure for releasing such information in order to reflect changes in societal attitudes. *See Adoption Records Reform: Impact on Adoptees,* 67 Marquette L.Rev. 110, 137 (1983). The biological parents' constitutionally protected right to privacy was statutorily assured at the time of adoption, and this court cannot condone indiscriminate invasion of their rights. Thus, we will not alter the heavy burden of establishing good cause prior to permitting any attempt to contact the natural parents.[6] However, once compelling reasons for release of identifying information have been proven by the one seeking disclosure, the biological parents, "those who may be vitally affected by disclosure," *Linda F.M.,* 52 N.Y.2d at 241, 418 N.E.2d at 1304, 437 N.Y.S.2d at 285, must be given an opportunity, if practical, to intervene through a representative and defend their interest in retaining anonymity that may not be fully articulated in their absence. *Id.* In the instant case the initial burden of establishing good cause or compelling need has not been sustained.

■ Despite the petitioner's assertions to the contrary, she does not have a fundamental right under the due-process clause of the Fourteenth Amendment to the United States Constitution to learn the identity of her biological parents. *See Alma Society, Inc. v. Mellon,* 601 F.2d 1225, 1231–33 (2d Cir.1979); *In re Roger B.,* 84 Ill.2d at

---

6. The natural parents may, of course, be contacted or their identities released if they have filed written consent permitting such disclosure with the adoption agency.

329, 49 Ill.Dec. at 733–735, 418 N.E.2d at 753–54; *In re Maples*, 563 S.W.2d at 762–64; *Mills*, 148 N.J.Super. at 309–10, 372 A.2d at 650; *Application of Romano*, 109 Misc.2d 99, 103–04, 438 N.Y.S.2d 967, 971 (1981); *Bradey*, 275 S.C. at 626–27, 274 S.E.2d at 421; *Re Application of Sage*, 21 Wash.App. 803, 812–13, 586 P.2d 1201, 1207 (1978).

The bureau's appeal is sustained, the decree appealed from is vacated, and the case is remanded to the Family Court for entry of a decree denying and dismissing Janice's petition.

BEVILACQUA, C.J., participated in the oral argument and in the decision of the court but retired prior to the publication of this opinion.