21378

Max BRADEY, Respondent, v. The CHILDREN'S BUREAU OF SOUTH CAROLINA, Appellant.

(274 S. E. (2d) 418)

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. Raymond G. Halford, Asst. Atty. Gen. Russell D. Ghent,* and *Staff Atty. Evans Taylor Barnette,* Columbia, *for appellant.*

*Robert M. Holland,* Spartanburg, *for respondent.*

January 20, 1981.

HARWELL, Justice:

This action was brought by Max Bradey to compel the Children's Bureau of South Carolina to disclose the identity of his natural parents. The action was instituted pursuant to Section 15-45-140(c) which provides:

"(c) All files and records pertaining to the adoption proceedings in the Children's Bureau in the State of South Carolina, or in the Department of Social Services of the State of South Carolina, or in any authorized agency, shall be confidential and withheld from inspection except upon order of court for good cause shown."

The trial judge found that Bradey's emotional distress, anxiety and earnest desire for the truth constituted good cause under the provision. Having so found "good cause" the court granted tentative relief to Bradey. The sealed names and record information on the natural parents were ordered to be delivered to the court for an *in camera* review. Following a court ordered confidential investigation, the court proposed to hold a further hearing with the attorneys involved to further ascertain the existence of compelling reasons not to disclose the information. The information would then be divulged to Bradey by a final order together with any pertinent restrictions. We reverse, concluding that the trial judge's finding of good cause, and consequent order, was an abuse of discretion, inasmuch as the record does not support those findings.

The respondent was born in this State in 1947. His natural mother placed him for adoption with the Bureau while he was an infant. With the Bureau's approval, he was adopted by the Bradeys, a couple with no other children. The adoptive father is now deceased but the adoptive mother resides with the respondent and his family.

At the hearing below, Bradey stated that he has been interested in learning the identity of his natural parents since

his teens and has actively pursued this interest for several years. The Bureau has cooperated in providing Bradey significant nonidentifying information,[1] but has been precluded from unsealing the names of the biological parents.

The record shows that Bradey's request for the identifying information is founded on a basic desire to know his identity. He took care to characterize this not as mere curiosity but rather as a deep personal need to know the truth. He asserts that the process he has undergone has made him emotionally unstable, a statement echoed by his wife who testified that her husband's preoccupation has had a sort of distracting effect on him. Despite this, Bradey has not suffered emotional or physical distress such as to have warranted the securing of medical assistance. Nor has his employment been adversely affected by this experience.

The Bureau argues that Bradey made an insufficient showing of good cause and that the trial judge gave insufficient consideration to the privacy rights of the natural parents. We agree for the reasons set forth herein.

Adoption is a creation of statutory law in this State. *Akers v. Hard,* S. C., 267 S. E. (2d) 536 (1980). Recognizing that children are at times born into cir-

---

[1] Section 15-45-140(d) provides:

"The provisions of this section shall not be construed to prevent any adoption agency from furnishing to adoptive parents, biological parents or adoptees nonidentifying information when in the sole discretion of the chief executive officer of the agency such information would serve the best interests of the persons concerned either during the period of placement or at a subsequent time nor shall the provisions of this chapter be construed to prevent giving nonidentifying information to any other person, party or agency who in the discretion of the chief executive officer of the agency has established a sufficient reason justifying the release of that nonidentifying information. As used in this subsection 'nonidentifying information' may include but is not limited to the following:

1. the health of the biological parents;
2. the health of the child;
3. the child's general family background without name references;
4. the length of time the child has been in the care and custody of the adoptive parents.

The release of other nonidentifying information shall be made at the discretion of the chieif executive officer of the adoption agency".

cumstances wherein their natural parents cannot or will not care for them, the State in its role as *parens patriae* developed the adoption process to assure stable homes for these children. To this end the adoption statutes Sections 15-45-10, *et seq.*, Code of Laws of South Carolina (1976), are designed to promote policies and procedures necessary for the protection of all the parties involved in an adoption. Without doubt, Section 15-45-140, which generally requires that the adoption records be sealed, serves all the parties in the adoption process: the adoptee, the adoptive parents, the natural parents and society at large.

Bradley concedes that the respective interests of the ■ natural parents and the adoptive child must be weighed in determining whether or not good cause has been established to warrant release of biological information. While partially correct, this does not go far enough. Even though the surviving adoptive parent here has ostensibly consented to unsealing the record, the lower court would nevertheless have the responsibility to determine the circumstances of that consent. And even beyond the impact on the immediate parties, due consideration must be given to the impact that each case may have on the viability of the adoption process.

In order to properly weigh the competing interests, ■ we must be mindful of the rationale for confidentiality in the adoption process. Not only does confidentiality insulate and nurture the newly formed adoptive family, *In re Christine,* 397 A. (2d) 511 (R. I. 1979), it also may be assumed to provide the impetus for a traumatized natural parent to come forward to allow the process to take place rather than resort to other less desirable means of dealing with prospective parenthood, *Application of Sage,* 21 Wash. App. 803, 586 P. (2d) 1201 (1978). The natural parent or parents must feel secure in the knowledge that their identity will usually remain confidential. This offers the parent a fresh start, confident that the personal information will be disclosed only for good cause on order of the court. This ex-

pectation of confidentiality arising from the statute is constitutionally protected as a right of privacy. *Alma Society, Inc. v. Mellon,* 459 F. Supp. 912 (S. D. N. Y. 1978); affirmed, 601 F. (2d) 1225 (2d Cir.); cert. denied, 444 U. S. 995, 100 S. Ct. 531, 62 L. Ed. (2d) 426 (1979); *Mill v. Atlantic City Department of Vital Statistics,* 148 N. J. Super. 302, 372 A. (2d) 646 (Ch. Div. 1977). See, *Stanley v. Georgia,* 394 U. S. 557, 89 S. Ct. 1243, 22 L. Ed. (2d) 542 (1969).

As has been recognized by the legislature, the rights of the natural parents cannot be made absolute. Other parties may have countervailing interests which may necessitate disclosure despite the normal assurance of secrecy. For this reason, the statute allows a party to come forward and make a showing of good cause. By "good cause" we believe the party must demonstrate a *compelling need* for the identifying information. As noted, nonidentifying information is already available to a party in the discretion of the agency for proper cause shown. See, Section 15-45-140(d). What constitutes a compelling need for identifying information depends upon the circumstances of each case.

Even while weighing the interests of the parties, we must recognize that the State's primary concern is in maintaining an effective adoption procedure which serves the best interests of adoptees generally. The need for identifying information thus must outweigh the general need for confidentiality. The considerations involved, which have particular relevance to this case, are dealt with at *Application of Maples,* 563 S. W. (2d) 760, 763-764 (Mo. 1978) quoting the Family Law Quarterly, Vol. XI, No. 2, Summer 1977, pp. 196-197:

"The primary interest of the public is to preserve the integrity of the adoptive process. That is, the continued existence of adoption as a humane solution to the serious social abused or neglected. In order to maintain it, the public has an interest in assuring that changes in law, policy or prac-

problem of children who are or may become unwanted, tice will not be made which negatively affect the supply of capable adoptive parents or the willingness of biological parents to make decisions which are best for them and their children. We should not increase the risk of neglect to any child, nor should we force parents to resort to the black market in order to surrender children they can't care for.

The public's interest is relevant as much to the appropriate pace of change as it is to the nature of the change. For example, even if there was general agreement that adoptees should have access to otherwise sealed records, we must still determine whether overly rapid movement in that direction would undermine the goals of adoption itself. In addition, the public interest requires that more research be done to determine the effect of policy change on the attitudes of adoptive parents and biological parents.

No one has yet shown that decades of policy protecting the anonymity of the biological parents and the security from intrusion of the parent-child relationship after adoption have been misguided. Quite the contrary. The overwhelming success of adoption as an institution which has provided millions of children with families, and vice versa, cannot be easily attacked.

The public has a strong interest, too, in preserving the confidential non-public nature of the process. Public attitudes toward illegitimacy and parents who neglect or abuse children have not changed sufficiently to warrant careless disclosure of the circumstances leading to adoption.

But the public also has an interest in the mental health of children who have been adopted—in order that they not become burdens to society. Some provision for the relatively small group of adoptees whose psychological needs are compelling would appear necessary."

> We believe that the Respondent has failed to demonstrate a compelling need for the identifying information. The finding of "good cause" was therefore

unwarranted. Bradey feels some insecurity; he shows some distraction; he has a sincere desire to know his identity. He has not, however, required medical assistance. We find it significant, too, that Bradey has enjoyed steady employment and an apparently stable family life of his own.

We do not question the sincerity of the respondent's desire, but when this desire is measured against the substantial interest of the State in an ongoing adoption institution based upon confidentiality, the desire comes up short. Disclosure follows in extraordinary circumstances. Bradey's circumstance simply is not extraordinary.

We have also considered and rejected the contention that Section 15-45-140(c) violates the adoptee's equal protection rights, even though the issue was not properly presented as an additional sustaining ground or argued below. The adoptee's status under the law does not place him in a suspect classification. The constitutional test applied to the adoption legislation is therefore whether there is a reasonable basis for the recognition of separate classifications which has a rational relation to the ends sought to be achieved by the legislature. In this case, there most assuredly is. *Alma Society, Inc. v. Mellon, supra; Mills v. Atlantic City Department of Vital Statistics, supra; Application of Sage, supra; Matter of Roger B.,* 85 Ill. App. (3d) 1064, 41 Ill. Dec. 386, 407 N. E. (2d) 884 (1980).

The order of the trial judge is accordingly,

Reversed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.