454 S.E.2d 307 (1995)
The CHARLESTON COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellant,
v.
FATHER, STEPMOTHER, AND MOTHER, Defendants,
of whom
Father and Stepmother are Appellants, and Mother is Respondent.
In the Interest of TWO MINORS UNDER THE AGE OF 18 YEARS, By their Guardian ad Litem, J. Gail RAHN, Appellant.
No. 24184.
Supreme Court of South Carolina.
Heard October 19, 1994.
Decided January 23, 1995.
*308 Margaret D. Fabri, Charleston, for appellants Father and Stepmother.
Frampton Durban, Jr., Asst. Sol., Charleston, for appellant Charleston County Dept. of Social Services.
J. Gail Rahn, Charleston, appellant, guardian ad litem, for minor children.
Coming B. Gibbs, Charleston, and David H. Wilkins, Greenville, for respondent.
MOORE, Justice:
Appellant Charleston County Department of Social Services (DSS) commenced this action to remove two minor children from respondent's (Mother's) custody. Removal was granted. This appeal is from an order of a successor family court judge granting Mother a new trial under Rule 63, SCRCP.[1] We reverse.

FACTS
Appellant (Father) and Mother divorced in December 1990 and custody of their two sons, aged five and two years, was given to Mother. Father married Stepmother in July 1991.
In October 1991, DSS filed an action seeking removal of the boys alleging Mother took baths with the children during which inappropriate sexual behavior occurred. The children were placed temporarily with Mother's brother and the family began seeing a therapist. When the hearing on the merits was held, DSS moved to dismiss its complaint claiming the children would not testify against Mother. No evidence was presented and, over Father's objections, the case was dismissed. The family court issued an order returning the children to Mother's custody and dismissing the case conditioned upon the continuation of family counselling.
Ten months later, the oldest child (Victim) had a session with Mary Mueller, a therapist at the County Health Department, during which he drew pictures indicating Mother had oral contact with his penis, and "punched" and "pinched" it.[2] The children were removed from Mother's custody and placed with DSS.
A hearing on the merits was held before Judge Mendel Rivers. Victim (now aged seven) testified that he had in fact drawn the pictures but that what he had told Ms. Mueller about Mother was not true. He could not explain why he had lied to Ms. Mueller but he denied he was coached by Father or Stepmother.
Dr. Ralston, the child psychologist who had been counselling the family since the first removal action in October 1991, testified she watched Victim's interview with Ms. Mueller through a one-way mirror and it was her opinion he had experienced "inappropriate sexual touching ... that he has made efforts to stop by telling." She also testified a child victim of intrafamilial sexual abuse will often recant the accusations because the child believes the report of abuse was the cause of the removal from the parent.
Dr. Rinaldo, a psychiatrist, testified on Mother's behalf. She began treating the family in December 1991 after the dismissal of the first removal action. She stated she felt there was abuse "in the past" but that it was not "ongoing" since the time she had been treating the family. She also disclosed the following incident which occurred during a therapy session with Victim and Father in May 1992.
He [Victim] alsohe also said that somethingsomething had been happening *309 with his penis before but was not happening now. And I asked him about the diaper [Mother put on him at night for bedwetting] and we talked about that a little bit. He said that seemed to be better. I asked him what was happening with his penis. And he went on to say that someone had put their mouth on it. And I asked him who that was, and he spelled out M-O-M. And I asked him about the details of that, you know, where he was, how that happened. He said, he was in his mother's bed and he felt something. I think at some point the words "bite bite bite" were said.
Dr. Rinaldo went on to state that Victim later recanted this accusation.
Dr. Rinaldo discussed this incident with Dr. Ralston who said it was similar to what Victim had told her in October 1991. Dr. Rinaldo also reported the incident to DSS and was told this behavior had been "previously investigated".
Dr. Rinaldo further testified:
A. I was concerned throughout that there could have been abuse. But Ibut I could notI continually felt torn betweenby the whole circumstances and really could never reach a permanent conclusion. You know, at different times I would feel that they had not been abused at all. Certainly, on May 19, I felt that there was a good chance that [Victim] had, exactly as he said.
Q. This was the M-O-M meeting?
A. Correct.
Finally, on cross-examination, Dr. Rinaldo conceded Victim's drawings were "stronger evidence" that abuse had occurred. She also admitted it is common for a child Victim of intrafamilial sexual abuse to recant his accusations.[3]
Mother testified she had never engaged in any sexual behavior with the children although she admitted bathing with them. She stated the last time she took a bath with the boys was "about two years ago" when Victim would have been about five years old.
Judge Rivers found Victim's drawing and report were credible, his recantation was consistent with abuse, and he was not coached into making the report. He concluded Mother had more likely than not engaged in inappropriate sexual contact with Victim. He ordered temporary custody of the children be given to Father and Stepmother with reasonable visitation to Mother.[4] He also ordered family counselling to continue for all parties and Mother to be treated as a sexual abuse perpetrator. Mother was ordered to pay child support of $500 per month. This order was issued February 12, 1993. Judge Rivers resigned from the bench shortly thereafter.
Mother moved for a new trial contesting several of Judge Rivers' factual findings and arguing legal error in the admission of hearsay testimony. Judge Mallard was assigned to the case. On February 10, 1994, he issued an order granting Mother a new trial pursuant to Rule 63 which defines the authority of a successor judge in post-trial matters.
DSS, the guardian ad litem for the children, Father, and Stepmother appealed. This Court granted appellants' petition for supersedeas[5] and denied Mother's motion to dismiss the appeal.[6]

ISSUE
Whether Judge Mallard properly exercised his discretion under Rule 63?

*310 DISCUSSION

Rule 63 provides:
If by reason of death, sickness, or other disability, a judge before whom an action has been tried is unable to perform the duties to be performed by the court under these rules after a verdict is returned or findings of fact and conclusions of law are filed, then [the successor judge] may perform those duties; but if [the successor judge] is satisfied that he cannot perform those duties because he did not preside at the trial or for any other reason, he may in his discretion grant a new trial.

(Emphasis added). Judge Mallard ruled he could not perform the required post-trial duties under Rule 59 because he did not preside at the trial and therefore a new trial should be granted pursuant to the underscored provision of Rule 63.
The threshold issue in this case is what discretion a successor judge has under Rule 63. There is a long-standing rule in this State that one judge of the same court cannot overrule another. Tisdale v. Amer. Life Ins. Co., 216 S.C. 10, 56 S.E.2d 580 (1950); Dinkins v. Robbins, 203 S.C. 199, 26 S.E.2d 689 (1943). Accordingly, we hold a successor judge may not substitute his own judgment for that of the trial judge; nor may he grant a new trial under Rule 63 unless he articulates a valid reason to grant post-trial relief based on the record before him.
In this case, Judge Mallard gave the following reasons for granting a new trial under Rule 63:
1. He could not determine if Victim's hearsay statements were properly admitted under S.C.Code Ann. § 19-1-180 (Supp.1994);
2. He could not determine if deletion of a finding regarding "testimony about a lock on a child's bedroom door" which should not have been considered would have altered the original judgment;
3. He could not determine if the failure to make specific findings regarding the precise acts of sexual abuse or exactly when they had occurred would have resulted in a new trial;
4. The finding that sexual abuse had occurred was against the greater weight of the evidence.
We find none of these reasons supports granting a new trial under Rule 63 as discussed below.

1. Admission of Victim's hearsay statements under § 19-1-180.

When a child under twelve years of age testifies and is subject to cross-examination, § 19-1-180 provides that his out-ofcourt statements are admissible in a family court proceeding concerning allegations of abuse or neglect. If, however, the child is found by the court to be unavailable to testify for any of five statutory reasons,[7] his out-ofcourt statements are admissible only if they are shown to have particularized guaranties of trustworthiness.
Mother moved for a new trial under Rule 59 on the ground Victim was unavailable to testify because he denied the truth of his outof-court statement. She argued the family court therefore erred in considering Victim's out-of-court statements under § 19-1-180 without making the findings of unavailability and trustworthiness required by the statute. Judge Mallard ruled that under State v. Pfirman, 300 S.C. 84, 386 S.E.2d 461 (1989), Victim was unavailable to testify and Mother had asserted a viable ground for relief from judgment. We disagree.
First, none of the statutory grounds for a finding of unavailability applies here. Further, Pfirman does not apply because it is a criminal case based on a criminal defendant's right to confront his accusers.[8] The case at hand is a civil matter in which the admissibility of hearsay is determined without the necessity of a Confrontation Clause analysis. Accordingly, we conclude Victim's hearsay *311 statements were properly admitted and Mother's ground for post-trial relief is without merit.
Since this ground for post-trial relief should have been denied on the record, we hold Judge Mallard abused his discretion in granting a new trial under Rule 63.

2. Finding regarding lock on children's bedroom door.

In the original judgment in this case, Judge Rivers' order includes the following finding of fact:
That uncontradicted testimony before the Court reveals that [Mother] had installed a lock on the exterior of the children's bedroom at her home. This testimony is of great concern to the Court, and, although [Mother] testified that she removed the lock shortly after she installed it, the reason for its installation were (sic) never adequately explained.
Judge Mallard ruled it was inappropriate for Judge Rivers to have considered this evidence because it occurred before the first removal action in 1991. We disagree.
First, while Judge Rivers' order mentions this evidence, it is not necessary to his ultimate finding of sexual abuse since there is no allegation the lock on the door was connected in any way with the reported abuse.[9] Moreover, contrary to Mother's assertions, there is no reason Judge Rivers could not consider evidence of events that may have occurred before the first removal action in October 1991. Although that action was dismissed, there was no adjudication abuse had not occurred; DSS simply failed to go forward at that time for lack of evidence. Cf. Greenville County Dept. of Social Services v. Bowes, ___ S.C. ___, 437 S.E.2d 107 (1993) (incidents of alleged abuse adjudicated under preponderance of evidence standard do not support termination of parental rights which must be determined beyond a reasonable doubt).
We conclude Judge Mallard abused his discretion in granting a new trial under Rule 63 since this ground for post-trial relief should have been denied on the record before him.

3. Failure to make specific findings regarding the precise acts constituting the sexual abuse and when exactly they occurred.

Judge Rivers found:
[I]t is more likely than not that [Mother] engaged in inappropriate sexual contact with [Victim] which contact amounts to sexual abuse under the law of South Carolina. Although this court is unable to conclude specifically as to the nature of the inappropriate sexual contact, it is clear that such contact as reported by [Victim] constituted either oral penile contact (fellatio) defined as sexual battery ... or the commission or attempted commission of a lewd act upon a child....
Judge Mallard found Judge Rivers' order was fatally defective since it failed to specify what precisely the sexual act was and when it occurred. This ground for post-trial relief is without merit. The record contains evidence supporting either statutory sexual offense cited by Judge Rivers which is sufficient for removal in this case.
Further, there is no requirement in this case that a finding be made regarding an exact time the abuse occurred. The family court may order removal in these circumstances upon finding it is more likely than not the child has been sexually abused and there is clear and convincing evidence the child cannot be protected from further harm. S.C.Code Ann. §§ 20-7-736(E) and -490(R) (1985 & Supp.1994). Judge Rivers found it was more likely than not abuse had occurred and concluded the children could not be protected in Mother's home until Mother had undergone treatment. This finding is sufficient to support removal in these circumstances.
In conclusion, Judge Mallard abused his discretion in granting a new trial under Rule *312 63 since post-trial relief should have been denied based on the record before him.

4. Weight of the evidence.

Judge Mallard concluded Judge Rivers' finding of inappropriate sexual conduct was against the clear weight of the evidence. As discussed above, a successor judge may not substitute his judgment for that of the trial judge. Accordingly, Rule 63 gives a successor judge no discretion to reweigh the evidence where the trial judge has made findings of fact supported by evidence in the record. See Lever v. United States, 443 F.2d 350 (2d Cir.1971).
The order granting a new trial under Rule 63 is
REVERSED.
CHANDLER, C.J., and FINNEY, TOAL and WALLER, JJ., concur.
NOTES
[1] Rule 63 is applicable to family court pursuant to Rule 2, SCRFC.
[2] The drawing depicts a cross-section of a trundle bed. The younger brother's head is seen on the lower bed and Victim's on the upper. The drawing of Victim shows a penis with a circle drawn over it which the child indicated was "a person putting her head on his penis." The child wrote Mother's name, "Beth", on the top of one of the drawings in response to the therapist's question asking the person's name. Another drawing includes two diagrams indicating "a person punching his penis" and "a person pinching his penis."
[3] Another of Mother's expert witnesses, Dr. Saylor, testified similarly regarding recantation. Dr. Saylor testified on Mother's behalf that in his opinion there was no sexual abuse and Victim was coached into making the accusations by Father and Stepmother.
[4] Judge Bridges subsequently ordered Mother's visitation rights restricted to DSS supervision based on allegations of threats by Mother to take the children to North Carolina and upsetting statements she made to the children.
[5] We specified that custody and visitation would remain as ordered under Judge Rivers' order and as modified by Judge Bridges.
[6] Mother contends this order is not directly appealable. She argues since this is an equity case and not a law case, S.C.Code Ann. § 14-3-330(2)(b) (1976), which allows appeal from an order granting a new trial, does not apply. We disagree and hold § 14-3-330 does apply to equity cases. See Gowens v. Gowens, 294 S.C. 500, 366 S.E.2d 29 (Ct.App.1988).
[7] (1) death; (2) physical or mental disability; (3) privilege; (4) incompetency; (5) substantial likelihood of trauma.
[8] In Pfirman we held a witness's out-of-court statement was not admissible as substantive evidence against the accused where the witness testified he did not remember making the statement imputed to him. This case is further distinguishable since Victim did not deny making the statement, he simply testified it was not true.
[9] Mother testified the sheriff asked about the lock on the door when he came to her home regarding the first removal action.