527 S.E.2d 771

**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Appellant,**

**v.**

**John DOE, whose true name is unknown, and Jamie Doe, DOB: 3–26–85, Respondents.**

**No. 3109.**

Court of Appeals of South Carolina.

Submitted Jan. 11, 2000.

Decided Feb. 7, 2000.

Rehearing Denied May 13, 2000.

Celeste Moore, of South Carolina Department of Social Services, of Columbia, for appellant.

Randall K. Mullins, of Mullins Law Firm, of North Myrtle Beach, for respondent.

HUFF, Judge:

In this adoption case, the South Carolina Department of Social Services (DSS) appeals from an order of the family court requiring service by publication upon a putative father to include the name of the biological mother. We reverse.

Jamie Doe (the child) was born on March 26, 1985, in Conway, South Carolina. DSS took the child into protective custody in September 1992, due to allegations of physical and medical neglect. The child was placed in her current foster/pre-adoptive home in 1993. On March 23, 1993, the child's biological mother executed a Consent and Relinquishment for Adoption granting legal custody of the child to DSS. On the same date, the biological mother signed an affidavit naming an individual (hereinafter referred to as J.T.) as the child's biological father. By order dated February 13, 1996, the family court terminated J.T.'s parental rights to the child.

On July 2, 1996, the child's foster mother instituted an action seeking to adopt the child. The family court appointed a guardian ad litem to represent the child. In May of 1997, the guardian ad litem wrote to DSS requesting the name and last known address of the biological mother in order to include her name in the service by publication to John Doe, a putative/unknown father. DSS responded by letter denying the request and stating that the name of the biological mother was confidential pursuant to relevant case and statutory law.

At a July 1997 status hearing, the parties agreed that even though the biological mother had named J.T. as the child's biological father, a John Doe notice should be published so as to terminate the parental rights of any putative father. However, the parties disagreed as to whether the biological mother's name should be included in the publication. The guardian ad litem took the position that inclusion of the biological mother's name in the publication was necessary to properly notify John Doe of the adoption proceedings. DSS contended publication of the biological mother's name would violate her right to privacy. In August 1997, the guardian ad litem filed a motion for an order of publication for service upon John Doe, with such publication to include the name of the biological mother. By order dated October 23, 1997, the family court denied the guardian's motion to include the biological mother's name in the John Doe publication, but nonetheless ordered DSS to expeditiously proceed with terminating John Doe's parental rights to the child.

In compliance with the family court's order, DSS filed an action against John Doe seeking termination of his parental rights. In connection with the action, DSS served John Doe through publication in a newspaper of general circulation. The mother's name was not included in the publication. At the TPR hearing in May of 1998, a different family court judge heard arguments regarding whether the publication constituted sufficient notice to John Doe given the absence of the biological mother's name. The family court found the publication was ineffective and ordered DSS to republish the notice with the biological mother's name included therein.[1] The family court denied DSS's motion for reconsideration. This interlocutory appeal followed.

On appeal, DSS argues the family court erred in requiring the inclusion of the biological mother's name in the John Doe notice by publication. We agree.

---

1. While this appears to be a case of one family court judge impermissibly overruling another, DSS does not seek reversal on this ground on appeal. See Charleston County DSS v. Father, 317 S.C. 283, 454 S.E.2d 307 (1995) (one judge may not overrule another judge of the same court); see also In the Interest of Antonio H., 324 S.C. 120, 477 S.E.2d 713 (1996) (appellate court may not address issue which was not presented to it); Connolly v. People's Life Ins. Co., 299 S.C. 348, 384

■ The right of adoption in South Carolina is not a natural right but wholly statutory, and must be strictly construed. *Hucks v. Dolan,* 288 S.C. 468, 343 S.E.2d 613 (1986). As noted by our Supreme Court in *Bradey v. Children's Bureau of South Carolina,* 275 S.C. 622, 626, 274 S.E.2d 418, 420 (1981), our adoption statutes "are designed to promote policies and procedures necessary for the protection of all the parties involved in an adoption."

Two areas of particular concern in the adoption arena are the right to notification and the right to privacy. South Carolina Code Ann. § 20–7–1734(B)(Supp.1998) provides that even where a father's consent or relinquishment is not required for purposes of adoption pursuant to § 20–7–1690, he is nonetheless entitled to notice of adoption proceedings. South Carolina Code Ann. § 20–7–1780(C)(Supp.1998) provides:

> All files and records pertaining to the adoption proceedings in the State Department of Social Services, or in any authorized agency, or maintained by any person certified by the department under the provisions of Section 20–7–1750, are confidential and must be withheld from inspection except upon court order for good cause shown.

Here, our concern is not whether John Doe is entitled to notice of the adoption proceedings, but to what notice he is entitled. More particularly, we must determine whether, under the facts and circumstances of this case, notice by publication to a putative father of adoption proceedings must include the name of the biological mother.

■ While the particular facts now before us present an issue of first impression, prior cases dealing with similar issues provide guidance as to whether the need to notify John Doe of the adoption proceedings constitutes "good cause" for disclosure of the biological mother's identity. In determining whether "good cause" has been established warranting the release of the confidential biological information, the court must apply a balancing test, weighing the respective interests of the parties to the adoption action, including those of the

S.E.2d 738 (1989) (the court of appeals may not address any issue not specifically raised to the trial court).

adoptee, the adoptive parents, and the biological parents. Further, beyond the impact on the parties, the court must give due consideration to the impact that each case may have on the viability of the adoption process. *Bradey, supra.* In applying this balancing test,

> [W]e must be mindful of the rationale for confidentiality in the adoption process. Not only does confidentiality insulate and nurture the newly formed adoptive family, it also may be assumed to provide the impetus for a traumatized natural parent to come forward to allow the process to take place rather than resort to other less desirable means of dealing with prospective parenthood. The natural parent or parents must feel secure in the knowledge that their identity will usually remain confidential. This offers the parent a fresh start, confident that the personal information will be disclosed only for good cause on order of the court. This expectation of confidentiality arising from the statute is constitutionally protected as a right of privacy.

*Id.* at 626–627, 274 S.E.2d at 421(citations omitted).

To establish good cause within the meaning of § 20–7–1780, a party must demonstrate a compelling need for the identifying information which outweighs the need for confidentiality. *Id.* at 627, 274 S.E.2d at 421. What constitutes a compelling need for identification depends upon the circumstances of each case. *Id.* "Disclosure follows in extraordinary circumstances." *Id.* at 629, 274 S.E.2d at 422.

We hold the guardian ad litem has failed to demonstrate a compelling need for the identifying information. The biological mother has identified an individual as the biological father in a signed affidavit and his parental rights have been terminated. Thus, notification to John Doe is precautionary in nature and based on the mere possibility that either the biological mother has been less than candid about the identity of the child's father, or she does not know the father's identity. In our view, these circumstances do not constitute good cause to subject the biological mother to the public scrutiny which would necessarily enure from publication of her name in connection with these proceedings. While the privacy rights of biological parents in adoption proceedings are not absolute, we believe disclosure of the mother's identity in this case would undermine the expectation that confidentiality will be

maintained in adoption proceedings except under the most extraordinary circumstances. *Id.*

■ Further, the mere existence of a biological link does not merit constitutional protection of due process rights. *Evans v. South Carolina Dep't of Soc. Servs.* 303 S.C. 108, 399 S.E.2d 156 (1990). In *Evans,* our Supreme Court held, where a father's consent is not needed for an adoption, the father's due process rights are not violated by publishing a "John Doe" notice, when the identity of the father is unknown because the mother refuses to reveal it. The court in *Evans* further held the family court erred in ordering DSS to divulge the name and address of the birth mother in order to ascertain the identity of the birth father, where the birth mother had refused to divulge the birth father's identity to DSS. The court found that to compel DSS "to reveal the birth mother's name and address would undermine the confidentiality that is the foundation of the adoption process and would violate the mother's right to privacy." *Id.* at 110, 399 S.E.2d at 157. Clearly, if DSS was not required to divulge the birth mother's name merely for purposes of ascertaining the birth father's name in the *Evans* case, DSS should not be compelled to divulge the birth mother's name in the instant case, where the purpose was to actually publish her name in the John Doe notice, a much greater infringement on her right to privacy.

For the foregoing reasons, the decision of the family court is REVERSED.

GOOLSBY and HOWARD, JJ., concur.