579 S.E.2d 303

**John DOE and Jane Doe, Petitioners,**

**v.**

**The WARD LAW FIRM, P.A.,**

**In re S. Doe (10–28–83), Respondent.**

No. 25623.

Supreme Court of South Carolina.

Heard Nov. 7, 2002.

Decided April 7, 2003.

James Fletcher Thompson, of Spartanburg, for Petitioners.

Robert Eric Davis, of Ward Law Firm, of Spartanburg, for Respondent.

Elizabeth A. Sumner, of Charleston, for Guardian Ad Litem.

JUSTICE BURNETT:

John and Jane Doe (collectively "Does") appeal the Court of Appeals' Order denying them access to their child's ("Child") adoption records maintained by the Ward Law Firm ("Law Firm") and the Spartanburg County Clerk of Court ("Clerk of Court"). *Doe v. The Ward Law Firm, P.A.*, Op. No.2001–UP–377 (S.C. Ct.App. Filed July 26, 2001). We reverse and remand.

## FACTS

The Does adopted Child by Order of the Spartanburg County family court on December 23, 1983. Child has experienced a host of medical ailments including both physical and mental problems. Within the first months of Child's life he

began experiencing respiratory difficulties which persist to this day. Doctors have diagnosed Child with a cyst located on his brain. He has also experienced delayed puberty.

At about six years of age, Child began to experience separation anxiety after father Doe suffered a heart attack. Child's mental health worsened when, at age thirteen, he began experiencing severe and violent mood swings. Child's violent tendencies culminated with physical confrontations with both parents. In one incident Child threatened mother Doe with a knife. In another, he destroyed the tendons and cartilage in her finger. Those violent tendencies have also been directed at himself resulting in self-mutilation and expressions of a desire to commit suicide.

The Does have attempted to help Child through medical and psychiatric care, including commitment to mental institutions on three separate occasions. A variety of psychiatrists, psychologists and neurologists examined him. In spite of such treatment, Child has failed to respond to therapy and has suffered severe reaction to some forms of medicinal treatment.

At the family court hearing, Does submitted letters of several doctors suggesting knowledge of child's biological family's medical history would be important in diagnosing and treating Child. One psychologist stated he "suspect[ed] that certain inherited predispositions, genetic weaknesses, possible congenital and/or birth delivery toxicity or trauma may have been factors in [Child's] present academic, personality and behavioral deficits."

For this reason, the Does petitioned the family court to permit the Does to view Child's adoption file held by the Ward Law Firm.[1] In the alternative, Does petitioned for access to the Clerk of Court's adoption records. In both instances, Does requested the family court appoint an intermediary to review the files and only divulge non-identifying information of the biological parents.

The family court declined to require Law Firm to allow Does to review its adoption file. The court found it lacked subject matter jurisdiction to address the issue because it was

---

1. The attorney who handled Child's adoption is deceased. The Ward Law Firm has possession of his files.

"a contract matter between the attorney and plaintiffs and not an issue incident to the adoption." Addressing the merits, the court found Law Firm was not an agency or category of persons contemplated by S.C.Code Ann. § 20–7–1780(C) (Supp.2001) (allowing a family court to grant access to an authorized agency's adoption records). Further, the family court found the Does had not shown "good cause" required by S.C.Code Ann. § 20–7–1780(B) (Supp.2001). The Court of Appeals affirmed.

## ISSUES

I. Did the Court of Appeals err in holding the Does did not show "good cause" to obtain the Clerk of Court's adoption file?

II. Did the Court of Appeals err in holding the Does could not review Child's adoption files housed by the Ward Law Firm?

III. Did the Court of Appeals err in holding the family court should not appoint an intermediary to review Child's adoption files and to contact the biological parents to obtain necessary information?

## DISCUSSION

### I

### Clerk of Court's Adoption Files

■ Both the family court and the Court of Appeals relied upon our ruling in *Bradey v. Children's Bureau of South Carolina*, 275 S.C. 622, 274 S.E.2d 418 (1981), to deny the Does an opportunity to review the adoption record filed with the Clerk of Court. In *Bradey*, Bradey sought to compel release of identifying information about his biological parents. As in the present case, the statute at issue prevented the dissemination of adoption information absent "good cause" shown.[2]

We began our analysis in *Bradey* by discussing the privacy interests of the parties to the adoption. We held a party could

---

2. The *Bradey* statute read:

All files and records pertaining to the adoption proceedings in the Children's Bureau in the State of South Carolina, or in the Department of Social Services of the State of South Carolina, or in any

not show the required good cause absent a compelling need for identifying information about the biological parents. Absent a compelling need, the veil of privacy surrounding the biological parents could not be lifted.

Although the *Bradey* decision did not specifically define 'compelling need', we noted Bradey did not fall into "the relatively small group of adoptees whose psychological needs are compelling[ ]" sufficiently to warrant violating the biological parents' privacy. *Id.* at 628, 274 S.E.2d at 422 (*quoting Application of Maples*, 563 S.W.2d 760, 763–64 (Mo.1978)). We further noted that Bradey's insecurities in not knowing the identity of his biological parents did not interfere with his ability to maintain steady employment and have a stable family life of his own. *Bradey*, 275 at 629, 274 S.E.2d at 422.

Good cause, therefore, required an individual show a compelling need to remove the veil of privacy from the biological parents. The compelling need itself was demonstrated by a variety of factors including the medical or mental health of the adopted child and whether not having the information impaired the child's ability to lead a stable, productive life.

Central to the analysis of both courts below is *Bradey's* reliance on confidentiality in the adoption process and the presumption that such confidentiality should be maintained absent an extraordinary, compelling need. While we do not disagree with such rationale nor do we overturn *Bradey,* it is important to note that, since the *Bradey* decision, the adoption code has undergone expansive revision. *See* 1986 Act No. 464; 1986 Act No. 525; *see also* 1981 Act No. 71 § 3 *repealing* S.C.Code Ann. § 15–45–140(c) (1976).

South Carolina adoption law continues to provide that all papers and records pertaining to an adoption are confidential and must be sealed to prevent inspection absent a showing of good cause.[3] *See* S.C.Code Ann. § 20–7–1780 (Supp.2001) ("No person may have access to the records except for good cause shown by order of the judge of the court in which the

authorized agency, shall be confidential and withheld from inspection except upon order of court for good cause shown.
S.C.Code Ann. § 15–45–140(c) (1976) *repealed* 1981 Act No. 71 § 3, eff. May 19, 1981.

**3.** State law currently mandates the family court require a background investigation of biological parents before allowing an adoption. *See*

decree of adoption was entered."). However, we must now be mindful when balancing the privacy rights of each party with the interests of the child that the Legislature has determined the best interests of the child should prevail. *See* S.C.Code Ann. § 20–7–1647 (Supp.2001) .The Legislature's stated purpose in enacting the changes contained in the Adoption Act:

> is to establish fair and reasonable procedures for the adoption of children and to provide for the well-being of the child, with full recognition of the interdependent needs and interests of the biological parents and the adoptive parents. However, when the interests of a child and an adult are in conflict, **the conflict must be resolved in favor of the child.**

*Id.* (emphasis added).

Accordingly, we are presented the task of determining whether the Does presented "good cause" why releasing such information would be in Child's best interests. The Does have done so.

Apart from Child's physical difficulties with respiratory problems and a cyst on his brain, the Does have demonstrated the need to obtain the information for Child's mental health. Child's behavioral history shows him to be dangerous to himself and his immediate family. Having shown that it is in the best interests of their child to obtain these confidential records they are entitled to view "all papers and records pertaining to the adoption and filed with the [Spartanburg County] clerk of court." S.C.Code Ann. § 20–7–1780(B).

## II

### Law Firm's Adoption Files

 The Does believe S.C.Code Ann. § 20–7–1780(D) provides access to the Law Firm's adoption files. We disagree.

---

S.C.Code Ann. § 20–7–1740(A)(3) (Supp.2001). The investigative report must include certain non-identifying information about the biological parents including "a medical history of the biological family of the adoptee, including parents, siblings, and other family members related to the adoptee including ages, sex, race, and any known genetic, psychological, metabolic, or familial disorders ..." S.C.Code § 20–7–1740(A)(3)(a) (Supp.2001). The medical history requirement did not take effect until three years after Child's adoption.

The statute allows an agency to furnish "adoptive parents, biological parents, or adoptees nonidentifying information when in the sole discretion of the chief executive officer of the agency the information would serve the best interests of the persons concerned either during the period of placement or at a subsequent time ..." *Id.* Under the Does' theory, the Law Firm is an agency, which is required to release their files to Does if shown to be in Child's best interests. We disagree.

Each party's argument in their respective brief and at oral argument centered upon whether a law firm is an agency based upon S.C.Code Ann. § 20–7–1780(D) and S.C.Code Ann. § 20–7–1650(E). We do not feel compelled to answer the question presently where, assuming arguendo the law firm is an agency, the statute vests the decision whether to release information to the "sole discretion of the chief executive officer of the agency." S.C.Code Ann. § 20–7–1780(D). As Law Firm consistently exercised its discretion to deny the release of Child's adoption files, the Does' reliance on § 20–7–1780(D) would not aid in obtaining the files, even if Law Firm were an agency according to the statute.

This conclusion does not leave Does without a remedy. Absent any statutory limitation on this Court's ability to compel Law Firm to release its adoption file, the intent of the Legislature in such circumstances is that, in the face of competing interests, the best interests of the Child be the paramount concern.[4] *See* S.C.Code Ann. § 20–7–1647.

---

4. Law Firm argues as additional sustaining grounds that the release of its adoption file raises attorney work product and attorney-client privilege problems. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (Prevailing party at trial may raise additional sustaining grounds for appellate court to affirm as long as the grounds appear in the record on appeal). While Law Firm raised the issues of both attorney-client privilege and work product privilege at trial we do not believe they have shown the information to be privileged. *See Rivers v. Rivers,* 292 S.C. 21, 354 S.E.2d 784 (Ct.App.1987) (the trial judge determines whether a communication is privileged after making a preliminary inquiry into the facts and circumstances surrounding the communication); *Cf.* Rule 26(b)(5), SCRCP. Further, the record does not make clear the identity of the client. If it were the Does, they may waive the attorney-client privilege. *See* Rule 407, SCACR, Rules of Prof. Conduct, Rule 1.6(a); *State v. Hitopoulos,* 279 S.C. 549, 551, 309 S.E.2d 747, 749 (1983).

The Does have shown good cause why the release of Law Firm's adoption file is in Child's best interests. Therefore, the Does may obtain information contained within Law Firm's file if a search of the Clerk of Court's file does not reveal the necessary information.

## III

### Appointment of Intermediary

■ The opinions of both the family court and Court of Appeals have correctly stressed the need to protect the identity of parties in an adoption because privacy is vital to the success of adoption as public policy. The Does have consistently maintained their desire throughout these proceedings to receive only non-identifying information about the biological parents in order to help Child. Their attitude is consistent with the Legislature's intent to protect the privacy of all parties to an adoption by limiting the dissemination of identifying information. *See, e.g.,* S.C.Code Ann. § 20–7–1780(A) (closing adoption hearings to the general public); § 20–7–1780(D) (allowing an agency under certain circumstances to furnish adoptive parents with "non-identifying" information); § 20–7–1780(E) (regulating the way agencies may release identifying information to adoptive child of biological parents and biological siblings; regulating the way agencies may release identifying information to biological parents and biological siblings of adoptive child); § 20–7–1780(F) (making it a misdemeanor to furnish adoptive child or biological parents/siblings identifying information).

However, if Does show "good cause" under § 20–7–1780 they may have access to all information included in the Clerk of Court's records on Child's adoption. The Does would also obtain identifying information when reviewing Law Firm's adoption file. The Legislature requires we defer to the best interests of the child when a conflict arises between the adopted child and privacy interests of the parties. In this case we may both promote the best interests of the child and the privacy rights of each party by the appointment of an intermediary.

It is in Child's best interests to have access to the file but it is not essential, to help Child, that Does receive identifying

information about the biological parents. By appointing a trained, confidential intermediary to review the file, contact the biological parents, if necessary, and prepare a report for the family court's review, we fulfill the child's best interests while maintaining the privacy of parties to an adoption. The family court possesses the power to appoint such an intermediary. *See* S.C.Code Ann. § 20–7–420(3) (1976) (empowering the family court to "make any order necessary to carry out and enforce the provisions of [the Children's Code]").

Colorado law is instructive on the intermediary's status. There, courts may appoint a "trained confidential intermediary" to determine the whereabouts of an adoptee's biological relatives. *See* Colo.Rev.Stat. Ann. § 19–5–304 *et. seq.* (Supp. 1992); *see also, In re Tomlinson,* 851 P.2d 170 (Colo.1993). The intermediary is considered an officer of the court and is required to guard any information received as confidential.[5] *See id.*

More relevant to the circumstances of this case, New York allows courts to appoint a guardian ad litem or "other disinterested person, who shall have access to the adoption records for the purpose of obtaining the medical information sought and consent to disclose the information from those records or, where the records are insufficient for such purpose, through contacting the biological parents." N.Y. Dom. Rel. Law § 114(4) (McKinney 1999). The intermediary "serves as a filter, obtaining the records and extracting the needed information, which is then passed on to the petitioner." N.Y. Dom. Rel. Law § 114, prac. cmt. The court, upon receiving the intermediary's report, reviews it *in camera,* redacts any identifying information, and discloses the balance of the report to the adoptee. *See id.; see also, Chattman v. Bennett,* 57 A.D.2d 618, 393 N.Y.S.2d 768, 769 (N.Y.App.Div.1977) (allowing court to "make available to petitioner, from the file pertaining to her adoption, her medical records and those of her

---

**5.** The primary purpose of appointing an intermediary under the Colorado statute is to arrange for the adoptee and relative to contact each other directly. It is not to conduct an independent investigation to gather pertinent facts or medical histories while maintaining the confidentialities of all parties. As such, Colorado's "trained confidential intermediary" statute is not unique. *See, e.g.,* Ga. Dom. Rel.Code § 19–8–23; Ala Code § 25–10A–31(h)–(j).

natural parents, as well as any other material therein relating to possible genetic or hereditary conditions, while deleting therefrom any nonpertinent information, including the names of the natural parents.").

We believe the appointment of an intermediary is appropriate under the circumstances of this case. The intermediary shall be independent of any party to the suit and be trained as a guardian ad litem or as an attorney. The intermediary will serve as a liaison between the court and the biological parents. It is the duty of the intermediary to review the adoption files and contact the biological parents, if necessary to obtain the information sought by the Does. The intermediary shall treat any information received as strictly confidential.

At the conclusion of the research, the intermediary shall issue a report detailing the information received while redacting any information which identifies the biological relatives. The family court judge shall then review the report *in camera* to determine whether the intermediary has furnished all pertinent information while maintaining the confidentiality of the biological parents.

## CONCLUSION

We REVERSE and REMAND this matter to the family court for proceedings consistent with this opinion.

TOAL, C.J., MOORE and WALLER, JJ., concur.
PLEICONES, J., concurring in result only.